1   Daniel T. Hayward, Esq.
    Nevada State Bar No. 5986
2   LAXALT & NOMURA, LTD.
    9600 Gateway Drive
3   Reno, Nevada 89521
    dhayward@laxalt-nomura.com
4   Telephone: (775) 322-1170
    Facsimile:  (775) 322-1865
5   *Attorneys for Third-Party Defendants*
    *Cede & Co. and*
6   *The Depository Trust Company*

7

8

9                **UNITED STATES DISTRICT COURT**
                    **DISTRICT OF NEVADA**
10

11   CHINA ENERGY CORPORATION, a     ]   Case No. 3:13-cv-00562-MMD-(VPC)
12   Nevada Corporation,                    ]
                                     ]
13                      Plaintiff,     ]
                                       ]
14          vs.                               ]
                                       ]
15   ALAN T. HILL, et al.,                 ]
                                       ]
16                      Defendants.     ]   **MOTION TO DISMISS**
                                       ]   **AND/OR STRIKE OF**
17   ELENA SAMMONS and                ]   **DEFENDANTS CEDE & CO. AND**
    MICHAEL SAMMONS,                ]   **THE DEPOSITORY**
18                  Third-Party Plaintiffs,   ]   **TRUST COMPANY**
                                       ]
19          vs.                               ]
                                       ]
20   CEDE & CO., et al.,                  ]
                                       ]
21                      Third-Party Defendants.   ]
22   _____ ]

23

24

Third-Party Defendants Cede & Co. ("Cede") and The Depository Trust Company ("DTC") (together, the "DTC Defendants") move the Court in accordance with Rules 12(b)(2) and (6) and 14(a)(4) of the Federal Rules of Civil Procedure to dismiss and/or strike the first amended third-party complaint (the "FAC").

This motion is made on the grounds that: (a) the Court does not have personal jurisdiction over the DTC Defendants; (b) third-party plaintiffs (the "Third-Party Plaintiffs") have made improper use of the impleader rule in bringing this action against the DTC Defendants; and (c) the Third-Party Plaintiffs have not pleaded the essential elements of any of their causes of action against the DTC Defendants.

This motion is based on the FAC and is supported by the following memorandum of points and authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    SUMMARY OF ARGUMENT

Though far from a model of clarity, the FAC appears to blame the DTC Defendants and COR Clearing (together with the DTC Defendants, the "Third-Party Defendants") for Third-Party Plaintiffs' failure to perfect their assertion of dissenters' rights with respect to a 12,000,000 to 1 reverse split effectuated by China Energy Corporation ("CEC") on July 3, 2013. What is clear, however, is that the FAC – which is the Third-Party Plaintiffs' second attempt to assert claims against the DTC Defendants – must be dismissed and/or stricken because it falls woefully short of elementary jurisdictional, procedural, and substantive pleading requirements.

First, the FAC (like the original third-party complaint) is barren of a solitary factual allegation to form a basis for this Court to exercise personal jurisdiction over the DTC Defendants.  This is hardly surprising because the DTC Defendants are New York entities with which the Third-Party Plaintiffs and their stock broker, Just2Trade, have never had any contractual or other relationship.  There is simply no basis for the DTC Defendants to be haled into this forum.

Second, Third-Party Plaintiffs do not stand to incur any liability in the underlying action brought against them by CEC (the "CEC Action").  As a matter of law, therefore, it is impossible for the DTC Defendants to be derivatively or secondarily liable to Third-Party Plaintiffs.  Accordingly, Third-Party Plaintiffs have improperly invoked Fed. R. Civ. P. Rule 14 to rope the DTC Defendants into this action.

Third, it is black letter law that a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Here, Third-Party Plaintiffs have merely rattled off "breach of contract," "breach of fiduciary obligations," "negligence" and a "judicial declaration" as causes of action applicable to all Third-Party Defendants.  Third-Party Plaintiffs, however, have neither properly nor sufficiently pleaded any of these causes of action against the DTC Defendants, and so they fail as a matter of law.

For these reasons, as set forth more fully below, the FAC should be dismissed with prejudice or stricken as against the DTC Defendants.

## II. BACKGROUND[1]

### A. DTC.

DTC is a wholly-owned subsidiary of The Depository Trust & Clearing Corporation ("DTCC"). *See* Declaration of Peter J. Gleeson, dated February 20, 2014 ¶ 7 ("Gleeson Decl.") (Ex. 1.) DTCC is a New York corporation with its principal place of business in New York City. (*See id.*). DTCC is a holding company and neither maintains an office nor does business in Nevada. (*Id.* ¶¶ 5-6.)

As set forth in the Gleeson Decl. (¶ 7), DTC is a limited purpose trust company established under New York law with its principal place of business in New York City. DTC neither maintains an office nor conducts business in Nevada. (*Id.* ¶ 10.) DTC is the nation's principal securities depository and a clearing corporation registered with the U.S. Securities and Exchange Commission under Section 17A of the Securities Exchange Act of 1934. *See id.* It is also a securities intermediary within the meaning of Article 8 of the Uniform Commercial Code. *See* Depository Trust Co., et al.; Order, SEC Release No. 34-20221 (Sept. 23, 1983), 48 Fed. Reg. 45167-02 (Oct. 3, 1983) (Ex. 2); NRS § 104.8102(1)(m)(1). Utilizing advanced automated systems for the "book-entry" transfer of securities, DTC operates a centralized system for the handling of securities deposited at DTC by the major banks and brokerage firms that constitute its "Participants." 15 U.S.C. 78s(b); In re The

---

[1] The facts set forth in this section are taken from the allegations of the FAC (which the DTC Defendants accept as true solely for the purposes of this motion). The facts set forth in this section are also taken from the Gleeson Declaration (as defined herein) as well as certain statutory and regulatory materials of which this Court can take judicial notice pursuant to Federal Rule of Evidence 201.

1    Depository Trust Co., SEC Release No. 34-47978, 2003 WL 21288541, at *6 (June 4, 2003)

2    (Ex. 3) (the "June 4 SEC Order").

3         DTC <u>only</u> maintains accounts for its Participants.  *See* Processing of Tender Offers

4    Within the National Clearance and Settlement System, SEC Rel. No. 34-19678 (Apr. 15,

5    1983), 48 Fed. Reg. 17603, 17604 n.5 (Apr. 25, 1983) (Ex. 4).  DTC does not provide

6    services or maintain accounts for the institutional or individual customers of its Participants,

7    such as the Third-Party Plaintiffs or their stock broker, Just2Trade. (Gleeson Decl., ¶¶ 11-

8    13.)  DTC, therefore, does not have any relationship with or owe any duties to the

9    institutional or individual customers of its Participants.  *See* U.C.C. §§ 8-506-508; U.C.C. §

10   8-507 cmt. 3 ("One of the basic principles of the indirect holding system is that securities

11   intermediaries owe duties only to their own customers."); U.C.C. § 8-102 (defining a

12   "securities intermediary" as "a clearing corporation."); NRS § 104.810(1)(M)(1) (same).

13        Third-Party Plaintiffs do not allege, nor can they, that they or their stock broker,

14   Just2Trade, have ever been Participants of DTC or that either has ever had any contractual

15   relationship with DTC.

16        In accordance with its SEC-approved rules, DTC accepts deposits of securities <u>only</u>

17   from its Participants, credits those securities to the depositing Participants' accounts and

18   effects changes in beneficial ownership among <u>only</u> its Participants' DTC accounts by

19   computerized book-entry movements pursuant <u>only</u> to its Participants' instructions. *See, e.g.,*

20   Rule 6 of DTC's Rules, *cited in* June 4 SEC Order, at *6 n.54.  As such, DTC's rules obligate

21   and allow DTC to take instructions only from its Participants.  June 4 SEC Order, at *7.

22

23

24

4

1   The FAC is devoid of any specific allegations of any conduct undertaken by DTC that

2   would subject it to personal jurisdiction in Nevada or to liability under any cognizable theory

3   of relief.

4   **B.     Cede & Co.**

5   Cede is a partnership established under the laws of New York with its principal place

6   of business in New York City.  (Gleeson Decl., ¶ 9.)  Cede & Co. is DTC's nominee for the

7   registration of securities that are deposited at DTC.  *Id.*; *see* U.C.C. art. 8(I)(C) ("Cede & Co.

8   is the nominee name used by [DTC], a limited purpose trust company organized under New

9   York law for the purpose of acting as a depository to hold securities for the benefit of its

10  participants").  Cede neither maintains an office nor conducts any business in Nevada.  (*Id.*,

11  ¶ 10.)  Third-Party Plaintiffs do not allege, nor can they, that they or their stock broker,

12  Just2Trade, have had any contractual relationship with Cede.  The FAC is devoid of any

13  specific allegations of any conduct undertaken by Cede that would subject it to personal

14  jurisdiction in Nevada or to liability under any cognizable theory of relief.

15  **C.     The Third-Party Plaintiffs' Allegations Against the DTC Defendants.**

16  The FAC arises from the CEC Action filed by CEC on September 27, 2013 in Nevada

17  state court against the Third-Party Plaintiffs, among others.  (*See* FAC ¶ 37.)  In the CEC

18  Action, CEC seeks a declaration that the Third-Party Plaintiffs, among others, failed to

19  comply with Chapter 92A of the Nevada Revised Statutes for exercising dissenters' rights

20  and were therefore not entitled to payment under Chapter 92A in connection with the 1 for

21  12,000 reverse split effectuated by CEC on July 3, 2013.  (FAC, Exhibit A, ¶ 40.)

22

23

24

5

On October 8, 2013, the CEC Action was removed to federal court. (FAC ¶ 15.)  On November 13, 2013, Third-Party Plaintiffs filed a motion seeking leave of this Court pursuant to Fed. R. Civ. P. Rule 14(a) to file the original third-party complaint against the Third-Party Defendants (the "Leave Motion").  (Dkt. 54.)    While the Leave Motion was pending, on December 17, 2013, Michael Sammons, as a defendant in the CEC Action, purported to serve a subpoena on DTC seeking voluminous documents and communications concerning the Shares (the "Subpoena").   On January 22, 2014, this Court granted the Leave Motion, noting that the parties to the CEC Action failed to file points and authorities in opposition and, therefore, were deemed to have consented to the Leave Motion.  (Dkt. 115.) None of the Third-Party Defendants received notice of or had an opportunity to be heard concerning the Leave Motion.

On January 22, 2014, the Third-Party Plaintiffs filed the original third-party complaint against the Third-Party Defendants. (Dkt. 116).   Before the Third-Party Defendants were each duly served with the original third-party complaint, the Third-Party Plaintiffs filed the FAC on January 29, 2013, containing virtually the identical factual allegations and relief sought as in the original third-party complaint.   The FAC alleges in relevant part that:

- "All Third-Party Defendants have the fiduciary obligation to cooperate with each other to timely and properly assert dissenters' rights for a beneficial shareholder and customer of Just2Trade upon proper and timely request by such customer." (FAC ¶ 8.);

- DTC refused to provide a consent letter and stated that if a shareholder wanted to assert dissenters' rights, they must allow DTC to handle it for a fee of $400 charged to each account. (FAC ¶ 19.);

- CEC's stock transfer agent, Quicksilver Stock Transfer ("Quicksilver") mailed a dissenters' rights package to Cede. (FAC ¶ 23.);

- Cede sent an assertion of appraisal rights to CEC, which contained two typographical errors. (FAC ¶ 25.);

- Cede subsequently withdrew that assertion of appraisal rights and simultaneously submitted another version with different instructions. (FAC ¶ 28.);

- On August 1, 2013, the Shares were held in "book-entry" in Cede's name on the books of Quicksilver, and that the DTC Defendants and COR Clearing caused Quicksilver to print and deliver a stock certificate for the Shares, which was not delivered to CEC within the time required by the dissenters' rights package. (FAC ¶¶ 30, 32, 34.); and

- The Third Party Defendants "jointly assumed responsibility for properly asserting Elena Sammons dissenters' rights … for which a fee of $400 was to be paid pursuant to a contract or binding agreement between the Third-Party Defendants and Just2Trade for intended third-party beneficiary Elena Sammons." (FAC ¶ 40.)

Third-Party Plaintiffs also allege that their failure to perfect their right to judicial appraisal was caused by the "errors" of all Third-Party Plaintiffs, which allegedly constitute "breach of contract, breach of fiduciary obligations, and/or negligence." (FAC ¶ 42.) Third-Party Plaintiffs seek a declaration that they failed to perfect their judicial appraisal rights because of these alleged "errors." (FAC ¶ 43.)

Notably, there are no allegations that Third-Party Plaintiffs had any communications or entered into any agreements with the DTC Defendants.

On February 11, 2014, Michael Sammons filed a motion to compel against Cede in connection with a subpoena (the "Motion to Compel") that, while substantially similar to the Subpoena served on DTC, was never properly served on Cede. (Dkt. 140.)

1    The DTC Defendants now move to dismiss and/or strike the FAC for lack of personal

2  jurisdiction, for failure to comply with the impleader provisions of the Federal Rules and for

3  failure to state a claim on which relief may be granted.[2]

4  ## III.   ARGUMENT

5  ### A.   There is no Basis for Jurisdiction Over the DTC Defendants.

6    Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the

7  plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *See Harris Rutsky*

8  *& Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128 (9th Cir. 2003); *see also*

9  *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1194 (9th Cir. 1988); *Gates Learjet Corp.*

10  *v. Jensen*, 743 F.2d 1325, 1330 (9th Cir. 1984) ("The party seeking to invoke the jurisdiction

11  of the court, [] has the burden of establishing personal jurisdiction.").

12    A third-party plaintiff bears the same burden. *Commercial Ins. Co. of Newark, N.J. v.*

13  *Pacific-Peru Constr. Corp.*, 558 F.2d 948, 955 (9th Cir. 1977) (recognizing burden was on

14  third-party plaintiff to establish personal jurisdiction); *Fairbanks Gold Mining, Inc. v. D&D*

15  *Tire, Inc.*, No. 3:10-cv-00492-ECR-WGC, 2011 U.S. Dist. LEXIS 110244, at *7 (D. Nev.

16  Sept. 23, 2011) (placing burden on third-party plaintiff to establish personal jurisdiction);

17  *Monje v. Spin Master, Inc.*, No. CV-09-1713-PHX-GMS, 2013 U.S. Dist. LEXIS 76077, at

18  *8 (D. Ariz. May 30, 2013) ("Spin Master, as the Third-Party Plaintiff, bears the burden of

19  establishing personal jurisdiction."); *BP W. Coast Prods., LLC v. Shalabi*, Case No. C11-

20  1341 MJP, 2012 U.S. Dist. LEXIS 82879, at *8 (W.D. Wash. June 14, 2012) ("Shalabi,

21  ---

[2]    Cede also respectfully requests that this Court adjourn Cede's time in which to file its

22  opposition to the Motion to Compel so long as the instant motion to dismiss and/or strike the

FAC is pending.

23

24

as Third-Party Plaintiff, bears the burden of establishing that the Court has personal jurisdiction as required by Fed. R. Civ. P 12(b)(2).").   It is manifest that Third-Party Plaintiffs have not met (and cannot meet) this burden.

### 1. *General Jurisdiction*

Third-Party Defendants' filings are devoid of any facts that would demonstrate the existence of general personal jurisdiction over the DTC Defendants.  As set forth in the accompanying Gleeson Declaration, none of the DTC Defendants are licensed to do business in Nevada, have offices in Nevada, sell or lease property in Nevada, or have a Nevada mailing address. (*See* Gleeson Decl. ¶ 10.)

Third-Party Plaintiffs also have not shown (and cannot show) that the DTC Defendants purposefully availed themselves of the privilege of conducting business in Nevada. *See Hoag v. Sweetwater Int'l*, 857 F. Supp. 1420, 1426 (D. Nev. 1994) (non-resident's contacts with forum contemplated "continuing and extensive involvement" in Nevada) (citation omitted).  The FAC contains no allegations whatsoever that the DTC Defendants availed themselves of this forum – none.  Indeed, <u>none</u> of the parties to the FAC are alleged to have any presence in Nevada at all.

### 2. *Specific Jurisdiction*

Third-Party Plaintiffs fare no better when it comes to specific jurisdiction. "[A] plaintiff must allege specific acts connecting defendant with the forum to support a finding of jurisdiction" under Nevada law. *See Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1208 n.5 (9th Cir. 1980).  Here, of course, Third-Party Plaintiffs have not alleged, nor could they allege, any such facts with respect to the DTC Defendants.  There are no allegations that any

1   officer or employee of the DTC Defendants ever traveled to Nevada or directed

2   communications to any Nevada resident, for any purpose related to the allegations in the

3   FAC.  Indeed, there are no allegations that the DTC Defendants undertook a single act in

4   Nevada, directed at Nevada, or intended to have any special consequence in Nevada.  There

5   are no allegations of any contacts, no less constitutionally cognizable "minimum contacts"

6   between the DTC Defendants and Nevada upon which the DTC Defendants could be said to

7   have "reasonably anticipate[d] being haled into court" in this forum, and thus no basis for

8   exercising personal jurisdiction.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286,

9   297 (1980); *Greenspun*, 634 F.2d at 1207; *Freeman v. Second Judicial Dist. Court ex rel.*

10  *County of Washoe,* 116 Nev. 550, 553, 1 P.3d 963, 965 (2000) ("To subject a defendant to

11  specific jurisdiction, this court must determine if the defendant 'purposefully established

12  minimum contacts' so that jurisdiction would 'comport with fair play and substantial

13  justice'") (citation omitted) (citing *Trump v. Eighth Judicial Dist. Court of State of Nev. In*

14  *and For County of Clark*, 109 Nev. 687, 699–700, 857 P.2d 740, 748–49 (1993)).

15          Nor can Plaintiffs bootstrap jurisdiction through an allegation that the DTC

16  Defendants' actions somehow had "effects" in Nevada.  The "effects test," as stated in

17  *Calder v. Jones*, 465 U.S. 783, 789 (1984), permits the assertion of jurisdiction over a non-

18  resident for acts occurring outside the forum *only when* such acts are expressly directed at

19  forum residents.  It is well recognized that "the effects test does not stand for the broad

20  proposition that a foreign act with foreseeable effects in the forum state always gives rise to

21  specific jurisdiction." *Medinah Mining, Inc. v. Amunategui*, 237 F. Supp. 2d 1132, 1137 (D.

22  Nev. 2002).  Something more is required – as stated in *Bancroft & Masters, Inc. v. Augusta*

23

24

*Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000), the plaintiff must establish that the defendant has engaged in "wrongful conduct individually targeting a known forum resident." Third-Party Plaintiffs have not alleged (nor could they have) such individual targeting in this case.

Finally, with respect to jurisdiction, there are established policy reasons for declining jurisdiction here. The DTC Defendants operate in New York as a depository and clearing agency for the nation's securities industry. Courts have historically, and with good reason, been disinclined to open the floodgates and allow the assertion of jurisdiction over non-resident institutions performing clearing functions based on any tangential contacts those institutions may have within a particular state. *See, e.g., Baptichon v. Nevada State Bank*, 304 F. Supp. 2d 451, 461 (E.D.N.Y. 2004), aff'd, 125 F. App'x 374 (2d Cir. 2005) (Nevada depository bank could not be subject to personal jurisdiction in New York based on its forwarding of checks to New York through federally regulated channels); *Lacovara v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 551 F. Supp. 601, 604 (E.D. Pa. 1982) ("it would be grossly unreasonable" to assert jurisdiction in Pennsylvania over a clearing firm that only processed orders, did no trading in Pennsylvania, and had no offices there); *Rollin v. William V. Frankel & Co.*, 996 P.2d 1254 (Ariz. Ct. App. 2000) (although market makers' quotes are accessible to broker/dealers around the country, who might then distribute the stock to customers in another state, such activity cannot amount to purposeful direction for jurisdictional purposes); *Fleitas v. Union Chelsea Nat'l Bank*, 687 So. 2d 911, 912 (Fla. Dist. Ct. App. 1997) (New York bank's acceptance of a Florida check initiating collection through its normal clearing house process did not subject it to long-arm jurisdiction of the Florida court). Nothing in this case provides a basis to break with this longstanding precedent.

Third-Party Plaintiffs have not met and cannot meet their burden of establishing personal jurisdiction over the DTC Defendants. *See Salesbrain, Inc. v. AngelVision Techs.*, 2013 U.S. Dist. LEXIS 40607, 27 (N.D. Cal. 2013). For this reason, the FAC should be dismissed.

**B.     Third-Party Plaintiffs Have Improperly Used the Impleader Procedure to Draw the DTC Defendants into this Litigation.**

Third-Party Plaintiffs may not invoke the impleader procedure because the DTC Defendants will not incur derivative or secondary liability as a result of the outcome of the CEC Action. Fed. R. Civ. P. Rule 14 sets forth that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). Rule 14(a)(4) provides that "[a]ny party may move to strike the third-party claim."

The purpose of the impleader procedure under Rule 14 "is to promote judicial efficiency by eliminating the necessity for the defendant to bring a separate action against a third individual who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's original claim." *SW Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir. 1986). The Ninth Circuit Court of Appeals, however, has adopted "narrow impleader requirements" as well as a "narrow approach" to evaluating the propriety of third-party complaints. *Wausau Underwriters Ins. Co. v. Cont'l Cas. Co.*, No. CV-07-0056-EFS, 2008 WL 793618, at *5, *4 (E.D. Wash. Mar. 24, 2008) (applying the "narrow interpretation" of Rule 14(a) adhered to by the Ninth Circuit).

As such, Ninth Circuit courts have repeatedly held that "a third-party claim may be asserted only when the third party's liability is in some way dependent on the outcome of the

main claim and the third party's liability is secondary or derivative. . . . It is not sufficient that the third-party claim is a related claim; the claim must be derivatively based on the original plaintiff's claim." *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 452 (9th Cir. 1983) (affirming dismissal of third-party complaint for failure to comply with the requirements of Fed. R. Civ. P. Rule 14); *see also Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 200 (9th Cir. 1988) (dismissing third-party complaint and observing that "[t]he crucial characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff.  The mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claim is not enough.").

Here, CEC brought the CEC Action seeking <u>only</u> declaratory relief against the Third-Party Defendants, among others. The CEC action will yield one of two results:

(1)     this Court will find that Third-Party Plaintiffs did not properly assert their dissenters' rights and that CEC owes nothing to them; or

(2)     this Court will find that the Third-Party Plaintiffs did properly dissent, will value the Shares in dispute, and will determine that CEC owes them money with respect to the Shares.

Third-Party Plaintiffs will be not be subject to "liability asserted against [them] by [CEC]" in either of these scenarios.  6 Wright & Miller *Fed. Prac. & Proc. Civ.* § 1446 (3d ed. 2013) (quoted in *Stewart*, 845 F.2d at 200). At best, therefore, the FAC "is a related claim" to the relief sought in the CEC Action.  In no way does it give rise to the type of "secondary or derivative" liability in order to compel the DTC Defendants to participate in this action. *See One 1977 Mercedes Benz*, 708 F.2d at 452.

Therefore, the FAC is improper under Rule 14 and must be dismissed and/or stricken.

**C.      Third-Party Plaintiffs Have Failed to State the Essential Elements of Any of the Causes of Action Against the DTC Defendants.**

The FAC must also be dismissed because it fails to state any cognizable claim against the DTC Defendants.   In order to survive dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This pleading imperative "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."  *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).  "Although courts generally assume the facts alleged are true, courts do not 'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'"  *Carstarphen v. Milsner*, 594 F. Supp. 2d 1201, 1207 (D. Nev. 2009) (quoting *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981)).

Third-party pleadings are held to the same standard.  *See e.g. United States v. Miners Contr. & Support, Inc.*, Case No. 3:13-cv-00203-MMD-VPC, 2014 U.S. Dist. LEXIS 9150, at *5 (D. Nev. Jan. 24, 2014) (applying pleading standard set forth in *Twombly* to deny motion to dismiss a third-party complaint.); *PHH Mortg. Servs. v. Western Thrift & Loan,* No. 2:10-CV-1626 JCM (PAL), 2011 U.S. Dist. LEXIS 27199, 7 (D. Nev. Mar. 4, 2011)

1   (same); *Fairbanks Gold Mining, Inc.*, 2011 U.S. Dist. LEXIS 110244, at *12 (same); *Colon*

2   *v. Blades*, 268 F.R.D. 143, 146 (D.P.R. 2010).

3       Third-Party Plaintiffs only identify the names of four causes of action in the "Claims

4   for Relief" section of the FAC – breach of contract, breach of fiduciary obligations,

5   negligence and a judicial declaration.  (FAC ¶ 42.)   Nowhere does the FAC set forth  any of

6   the elements for these purported causes of action or, most importantly under *Iqbal* and its

7   progeny, supporting factual allegations demonstrating that these standards have been met.

8   Nor could Third-Party Plaintiffs establish a plausible claim for relief against the DTC

9   Defendants.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009) ("Rule 8 does not empower

10  respondent to plead the bare elements of his cause of action, affix the label "general

11  allegation," and expect his complaint to survive a motion to dismiss."); *Aevoe Corp. v. Ae*

12  *Tech. Co.*, Case No. 2:12-cv-00053-GMN-NJK, 2013 U.S. Dist. LEXIS 31647, at *11 (D.

13  Nev. Mar. 7, 2013) (granting motion to dismiss where plaintiffs failed  to plead elements of

14  cause of action even as bare conclusion.); *Pica v. Wachovia Mortg.*, No. 2:09-cv-02372-

15  GEB-KJN, 2010 U.S. Dist. LEXIS 48624, 26, (E.D. Cal. Apr. 14, 2010) (granting motion to

16  dismiss where plaintiff failed to plead basic elements of claim.).

17      <u>First</u>, Third-Party Plaintiffs have failed to plead facts sufficient to state a claim for

18  breach of contract.  In order to plead this claim, a complaint must allege that the parties

19  entered into a contract, defendant breached and plaintiff suffered damages.  *Saini v. Int'l*

20  *Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006).

21      Here, there is no written contract, nor any facts that would support an implied

22  contract.   Beyond allegations concerning alleged communications between the DTC

23

24

Defendants and other entities, there are no allegations concerning any communications between the DTC Defendants and Third-Party Plaintiffs. There are no allegations regarding any relationship between the DTC Defendants and Third-Party Plaintiffs – nothing that comes even close to establishing the existence of a contract between the parties. This is hardly surprising. Article 8 of the UCC makes crystal clear that DTC's relationships are with its Participants. NRS § 104.8115 cmt. 4 ("a securities intermediary owes duties only to its own entitlement holders," which, in the case of DTC, are its Participants); *see also* June 4 SEC Order, at *6; U.C.C. §§ 8-506-508; U.C.C. § 8-507 cmt. 3 ("One of the basic principles of the indirect holding system is that securities intermediaries owe duties only to their own customers."); NRS § 104.8507 cmt. 3 (same).

Third-Party Plaintiffs cannot salvage the FAC with the naked allegation that "Third-Party Defendants jointly assumed responsibility for properly asserting Elena Sammons dissenters' rights … pursuant to a contract or binding agreement between the Third-Party Defendants and Just2Trade for intended third-party beneficiary Elena Sammons." (FAC ¶ 40.) This bare allegation and legal conclusion lumped against <u>all</u> Third-Party Defendants, without more, is insufficient to sustain a cause of action for breach of contract against <u>the DTC Defendants</u>. *See Hoff v. United States*, 2012 U.S. Dist. LEXIS 178701, *9 (D. Nev. 2012) (finding grouping of multiple defendants together for purposes of asserting broad allegations insufficient for pleading purposes under the Federal Rules).

The FAC also does not contain a single substantive allegation to support Third-Party Plaintiffs' bare legal conclusion that they are third-party beneficiaries to a "contract or binding agreement between the Third-Party Defendants and Just2Trade." (FAC ¶ 40.)

1  "Under Nevada law, third party beneficiary status is created when two elements are present:

2  (1) a clearly apparent promissory intent to benefit the third party, and (2) the third party's

3  reliance is foreseeable.  The fact that a contract confers a benefit that is merely incidental on

4  a third party is insufficient to create third party beneficiary status.  Absent a clear intent by

5  the promisor to benefit the third party, such third party does not have standing to assert a

6  claim as a third party beneficiary." *Ideal Elec. Co. v. Flowserve Corp.*, No. CV-S-02-1092-

7  DAE(LRL), 2006 WL 3434745, at *10 (D. Nev. Nov. 22, 2006) (finding that third-party

8  could not claim beneficiary status) (citing *Elizabeth E. v. ADT Sec. Sys. W.*, 839 P.2d 1308,

9  1311 (Nev. 1992); *Olson v. Iacometti*, 91 533 P.2d 1360, 1363-64 (Nev. 1975); *Liphsie v.

10  Tracy Inv. Co.*, 566 P.2d 819, 825 (Nev. 1977)), *order amended on other grounds*, 2007 WL

11  1108537 (D. Nev. Apr. 10, 2007).  Neither of these elements is present here.  Nor can Third-

12  Party Plaintiffs ever properly plead these elements because, as noted, Article 8 of the U.C.C.

13  provides that the DTC Defendants only owe duties to their Participants.

14      Second, Third-Party Plaintiffs' fiduciary duty claim is similarly fatally defective

15  because they have not pled (nor could they) the existence of a fiduciary relationship with the

16  DTC Defendants.  A plaintiff advancing a breach of fiduciary duty claim must first establish

17  the existence of fiduciary or confidential relationship between himself and the defendant.

18  *Stalk v. Mushkin*, 125 Nev. 21, 28, 199 P.3d 838, 843 (2009) ("a breach of fiduciary duty

19  claim seeks damages for injuries that result from the tortious conduct of one who owes a duty

20  to another by virtue of the fiduciary relationship").   A confidential relationship exists where

21  one party occupies toward another such a position of advisor or counselor as reasonably to

22  inspire confidence that he will act in good faith for the other's interest. *See Perry v. Jordan*,

23

24

111 Nev. 943, 947, 900 P.2d 335, 338 (1995) (a confidential relationship "exists when one party gains the confidence of the other and purports to act or advise with the other's interests in mind") (internal quotations and citation omitted).

Third-Party Plaintiffs cannot circumvent their pleading obligations by asserting a bald, conclusory statement that "[a]ll three Third-Party Defendants have the fiduciary obligation to cooperate with each other to timely and properly assert dissenters' rights for a beneficial shareholder and customer of Just2Trade upon proper and timely request by such customer." (FAC ¶ 8.) This effort to lump all defendants together has been soundly rejected as a means to state a cause of action for breach of fiduciary duty. *See Weinstein v. Home Am. Mortg. Corp.*, No. 2:10-cv-1552-JCM RJJ, 2010 WL 5463681, at *4 (D. Nev. Dec. 29, 2010) ("Although plaintiff states that 'Defendants, and each of them, were in a [fiduciary] relationship of special confidence with Debtor,' that conclusory allegation fails to cite facts or circumstances which establish such a relationship in this case") (internal citations omitted).

As noted above, the DTC Defendants maintain accounts only for the benefit of and in accordance with the instructions of their Participants. There is no allegation (nor could there be) that they have ever maintained any account with Third-Party Plaintiffs. *See generally In re Adler Coleman Clearing Corp.*, 198 B.R. 70, 73 (Bankr. S.D.N.Y. 1996) (clearing firm generally not liable for losses occasioned by introducing broker because clearing firm does not have fiduciary relationship with customers of that broker); *see also Fox Int'l Relations v. Fiserv Secs.*, Inc., 490 F. Supp. 2d 590, 615 (E.D. Pa. 2007) (stating that "a clearing broker, 'in performing its ordinary clearing broker function' has no fiduciary duties to customers of

an introducing broker") (citation omitted); *Warren v. Tacher*, 114 F. Supp. 2d 600, 603 (W.D. Ky. 2000) ("Clearing firms are generally not responsible to customers for the actions of an introducing broker and do not owe fiduciary duties to the customer"); *Stander v. Fin. Clearing Svcs. Corp.*, 730 F. Supp. 1282, 1286 (S.D.N.Y. 1990) ("'[A] clearing agent... is generally under no fiduciary duty to the owners of securities that pass through its hands'") (citation omitted).

Third, Third-Party Plaintiffs similarly fail to state a cause of action for negligence, in that they have not alleged (and cannot allege) any duty owed specifically to them by any of the DTC Defendants. *See, e.g., Larson v. Homecomings Fin., LLC*, 680 F. Supp. 2d 1230, 1235 (D. Nev. 2009) (dismissing claim for negligence because defendant owed no duty to plaintiff); *see also* June 4 SEC Order, at *6; U.C.C. §§ 8-506-508; U.C.C. § 8-507 cmt. 3 ("One of the basic principles of the indirect holding system is that securities intermediaries owe duties only to their own customers."); U.C.C. § 8-102 (defining a "securities intermediary" as "a clearing corporation.").

Lastly, because Third-Party Plaintiffs have failed to state a claim for relief on any of their substantive causes of action, their request for declaratory relief (FAC ¶ 42), should be denied as well. *See State Farm Mut. Auto. Ins. Co. v. Jafbros Inc.*, 109 Nev. 926, 928, 860 P.2d 176, 178 (Nev. 1993) ("It is axiomatic that a court cannot provide a remedy unless it has found a wrong"); *Douglas v. Don King Prods., Inc.*, 736 F. Supp. 223, 225 (D. Nev. 1990) (declaratory relief unavailable in controversies involving only "future or speculative rights.").

*          *          *

19

1    Based on the foregoing, the FAC should be dismissed with prejudice and/or stricken

2    as against the DTC Defendants, together with such other and further relief as the Court

3    deems appropriate.

4    Dated:  February 20, 2014

5

6                         LAXALT & NOMURA, LTD.

7

8    By: _____
                          Daniel T. Hayward, Esq.
9                         Nevada State Bar No. 5986
                          9600 Gateway Drive
10                        Reno, Nevada  89521

11                        *Attorneys for Third-Party Defendants*
                          *Cede & Co., and The Depository Trust Company*

12

13

14

15

16

17

18

19

20

21

22

23

24

**CERTIFICATE OF SERVICE**

I, the undersigned, declare under penalty of perjury, that I am over the age of eighteen (18) years, and I am not a party to, nor interested in, this action. On this 20th day of February, 2014, I caused to be served a true and correct copy of the forgoing by method indicated

XX_____ by Court's CM/ECF Program

And addressed to the following:

Anjali D. Webster, Esq.
Justin J. Bustos, Esq.
Gordon Silver
100 W. Liberty Street
Reno, 89501

Michael N. Feder, Esq.
Gordon Silver
3960 Howard Hughes Parkway, 9th Floor
Las Vegas, NV 89169

Frances Floriano Goins, Esq.
Ulmer & Berne LLP
1660 West 2nd Street, Ste 1100
Cleveland, OH 44113
*Attorneys for Plaintiff China Energy Corporation*

Michael Sammons
15706 Seekers Street
San Anotnio, TX 78255
*Defendant/Third Party Plaintiff*

Richard L. Elmore, Esq.
Holland & Hart LLP
5441 Kietzke Lane, 2nd Floor
Reno, NV 89511
*Attorneys for Defendant Thomas S. Vredevoogd*

21

LOUIS M. BUBALA III
State Bar No. 8974
(lbubala@armstrongteasdale.com)
BRET F. MEICH
State Bar No. 11208
(bmeich@armstrongteasdale.com)
ARMSTRONG TEASDALE LLP
50 West Liberty, Suite 950
Reno, NV 89501
Telephone: (775) 322-7400
Facsimile: (775) 322-9049
Counsel for Third Party Defendant COR Clearing

And by U.S. Mail to Pro Se Parties addressed as follows:

Elena Sammons
15706 Seekers St
San Antonio, TX 78255
*Defendants / Third-Party Plaintiffs (Pro Se)*

Randy Dock Floyd
4000 Goff Road
Aynor, SC 29511
*Defendant (Pro Se)*

Jun He
231 Split Road Rd
The Woodlands, TX 77381
*Defendant (Pro Se)*

Alan T. Hill
9501 Avenida Del Oso NE
Albuquerque, NM 87111
*Defendant (Pro Se)*

Mary E Arnold
An employee of Laxalt & Nomura, Ltd.