Michael Sammons, pro se
15706 Seekers St
San Antonio, TX  78255
michaelsammons@yahoo.com

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

China Energy Corporation
    Plaintiff

Vs.    Case No.   3:13-CV-562-MMD-VPC

Alan Hill, et al
    Defendants

**Elena Sammons**
**Michael Sammons**
    **Third-party Plaintiffs**

    **Vs.**
**Cede & Co.**
**The Depository Trust Company**
**COR Clearing**
    **Third –Party Defendants**

## THIRD-PARTY PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT AS TO CEDE & CO. AND THE DEPOSITORY TRUST COMPANY

Comes the Defendant-Third Party Plaintiff, Michael Sammons, and moves this Honorable Court to issue a summary judgment as to the declaration sought by the Third-Party Plaintiffs Michael and Elena Sammons ("**TP-P**") against Cede & Co. ("**Cede**") and the Depository Trust Company

1

("**DTC**"), collectively "**Cede/DTC**", to wit: "Cede/DTC inexcusably failed to *timely* deliver the TP-P's 650,000 share certificate of China Energy Corporation ("CEC") to CEC in Nevada as required by the Nevada Dissenters' Rights Statutes, and as a result the TP-P lost their right to judicial appraisal of their CEC shares." F.R.C.P. 56(a); 28 U.S.C. §2201

## UNDISPUTED FACTS

(1)     On February 20, 2013, CEC filed documents with the SEC indicating that it planned on effecting a 12,000,000 to 1 reverse split, thereby eliminating all shareholders other than the CEO and majority shareholder, Mr. Wenxiang Ding, a resident and citizen of China. All other shareholders were to be cashed out at $.14/share. See Complaint #13, 48. See CEC MPSJ, Exh. 4, Decl. of Mr. Li, Dkt. 71.

(2)     CEC expert Rand Curtiss opined that although the liquidation value of CEC was $2.29/share and the going concern value was $4.72/share, a 97% discount down to $.12/share for "fair value" needed to be applied due to currency exchange concerns[1] and the low market price[2]. (See CEC valuation Report by Rand Curtiss attached to "Motion for Partial Summary Judgment on Valuation as of July 3, 2013," Dkt. 37)[3]

---

[1] Which the Sammons Defendants solved by seeking "fair value" in Chinese yuan rather than U.S. dollars.

[2] Of course, this is clearly improper under American Ethanol v. Cordillera Fund, 252 P. 3d 663, 668 n. 3 (Nev. 2011) ("The district court misapplied the term "fair market value." "Fair market value" and "fair value" are two separate concepts.")

[3] The CEC valuation Report by Rand Curtiss was submitted to the SEC as part of the reverse split review process, and can be found on the sec.gov website under China Energy Corporation, "Definitive Information Statement" filed May 3, 2013. See In re. Silicon Graphics, 970 F. Supp. 746, 758 (ND Cal 1997)(finding that the court may take judicial notice of "'the contents of relevant public disclosure documents required to be filed with the SEC . . . '")

(3)     On July 3, 2013, the CEC reverse split was completed when CEC filed Amended Articles of Incorporation with the Secretary of the State of Nevada. Complaint #13, CEC MPSJ, Exh. 4, Decl. of Mr. Li, Exh. A (CEC0007), Dkt. 71.

(4)     Cede & Co., the nominee name used by the DTC, was the shareholder of record for 650,000 shares held by Just2Trade in the retirement account of Elena Sammons. Complaint #16. See Exhibit A, Affidavit of Michael Sammons, attached.

(5)     As a matter of law in Nevada, only the stockholder of record (Cede & Co. in this case) could assert dissenters' rights for the benefit of beneficial shareholders. Smith v. Kisorin USA, Inc., 254 P. 3d 636 (Nev. 2011)(assertion of dissenters' rights by beneficial shareholder invalid – only Cede & Co., as shareholder of record, may assert dissenters' rights.)

(6)     CEC's stock transfer agent, Quicksilver Stock Transfer, LLC of Las Vegas, NV ("Quicksilver"), mailed a Dissenter's Rights Notice ("Notice") to Cede & Co. on Thursday, July 11, 2013. Complaint #18; Aff. of Mr. Shinderman #4, Exh. 5, Dkt 71; a copy of the Notice is attached to CEC MPSJ, Aff. of Mr. Shinderman, Exh. 5 at pg. 11, Dkt. 71.

(7)     Cede & Co. received the Dissenters' Rights Package on or prior to July 16, 2013. See Exhibit F attached (DTCC information sheet created "07/16/2013" regarding CEC reverse split and dissent option).

(8)     Both TD Ameritrade and Just2Trade, stockbrokers through which the TP-P held shares of CEC in the name of Cede & Co., informed the TP-P that if they desired to dissent and qualify for judicial appraisal of their CEC shares, they must instruct the brokers to notify Cede/DTC and the TP-P would have to agree to a $400.00 DTC fee per account dissent. See Exhibit A, Affidavit of

3

Michael Sammons, attached, and <u>Exhibit E</u>, attached (DTC published Fee Schedule).

(9)    The TP-P were informed by TD Ameritrade on August 23, 2013 that the DTC would begin accepting dissent requests from beneficial shareholders within 24-48 hours. The DTC began accepting such requests the next day, and the TP-P instructed their brokers on August 24, 2013 to proceed with the dissent through Cede/DTC. See <u>Exhibit A</u>, Affidavit of Michael Sammons, attached.

(10)    "A stockholder who receives a dissenters' rights notice … must … deposit the stockholder's certificates, if any, in accordance with the terms of the notice." NRS 92 A.440(1)(c). The Notice in this case required that stock certificates be delivered to CEC within 30 days of delivery of the Notice. See copy of the Notice attached to CEC MPSJ, Aff. of Mr. Shinderman, Exh. 5 at pg. 11, Dkt 71.

(11)    In a letter dated July 29, 2013, Cede & Co., the shareholder of record of 650,000 shares held for beneficial shareholder Elena Sammons, asserted "appraisal (or dissenters') rights" on her behalf, and stated that any further communications should be directed to Elena Sammons at her home address.[4] The letter contained two typos (street number and number of shares). On August 9, 2013 the TP-P delivered to CEC (a) a copy of the July 29, 2013 Cede letter asserting dissenters/appraisal rights and (b) a letter from Elena Sammons which noted and corrected the two typos. See <u>Exhibit B</u>,

---

[4]    It is not clear when this letter, dated July 29, 2013, was actually delivered by Cede & Co. to CEC in Nevada. In any event, the TP-P provided a copy of that letter, along with their own letter noting two typos in the Cede letter, to CEC on August 9, 2013. See <u>Exhibit B</u>, attached: Affidavit of Michael Barr, at pg. 2 #8-9, and Ex. C attached to the Barr affidavit (copy of both letters).

attached: Affidavit of Michael Barr, at pg. 2 #8-9, and Ex. C attached to the Barr affidavit (copy of both letters).

(12)     On August 7, 2013 Elena Sammons delivered to CEC a payment demand letter for the "fair value" of the 650,000 shares of CEC.  See <u>Exhibit B</u>, attached: Affidavit of Michael Barr, at pg. 2 #6-7, and Ex. C (copy of letter) attached to the Barr affidavit.

(13)     On August 8, 2013, the Depository Trust & Clearing Corporation ("DTCC"), the corporate parent of the DTC, instructed Quicksilver in Las Vegas, NV, to print a new stock certificate for the 650,000 shares of CEC (in the name of Cede & Co.) and ship said certificate to the DTC in Brooklyn, New York.  See <u>Exhibit C</u>, attached: Affidavit of Jodi Godfrey, at pg. 2 #6, and Ex. B-2 (copy of letter) attached to the Godfrey affidavit.

(14)     The 650,000 share certificate in the name of Cede & Co., see <u>Exhibit C</u>, attached: Affidavit of Jodi Godfrey, at pg. 2 #6, and Ex. B-1 attached to that affidavit (copy of certificate), was sent FedEx overnight to the DTC on August 8, 2013; see <u>Exhibit C</u>, attached: Affidavit of Jodi Godfrey, at pg. 2 #6.

(15)     On Friday, August 23, 2013, the 650,000 share certificate in the name of Cede & Co. was sent by FedEx from COR to Quicksilver, and was delivered on Monday, August 26, 2013.  See <u>Exhibit D</u>, attached: Cover letter from COR Clearing dated August 23, 2013 with a "AUG 26" date received stamp by Quicksilver; UPS tracking and proof of delivery on September 26, 2013.

(16)     Delivery of the 650,000 share certificate on August 26, 2013 failed to comply with the Notice which required delivery within 30 days of delivery of the Notice.  Based upon a mailing date of July 11, 2013, and assuming a

5

legally valid Notice[5], the deadline for delivery of the payment demand and delivery of the stock certificate was August 12, 2013.

(17)    In a letter dated September 25, 2013, CEC informed the TP-P that due to the untimely delivery of the 650,000 share certificate that the TP-P had lost their dissent/appraisal rights pursuant to the Nevada Dissenters' Rights Statutes. Complaint, #34; see also Affidavit of Michael Sammons, attached as Exhibit A.

## MEMORANDUM OF POINTS AND AUTHORITIES

Each beneficial shareholder with shares of CEC held of record by Cede & Co. who wanted to dissent and obtain a judicial appraisal of their CEC shares was required to agree to pay a $400.00 DTC assertion of dissenter's rights fee.[6] Undisputed Facts ("Facts")#8. As a matter of law, only the stockholder of record, in this case Cede & Co., could assert dissenters' rights. Smith v. Kisorin USA, Inc., 254 P. 3d 636 (Nev. 2011)(assertion of dissenters' rights by beneficial shareholder invalid – only Cede & Co., as shareholder of record, may assert dissenters' rights.)

Cede & Co. is the nominee name used by the DTC to register securities. Facts #4. Because only Cede & Co., as the stockholder of record, had the legal authority to assert dissenters' rights, the DTC had full and complete control over the process. The DTC procedures for asserting dissenters' rights had to

---

[5] The Court has indicated it would take motions in the order filed. It is therefore anticipated that before addressing this motion the Court will have ruled upon the pending "Amended Motion for Partial Summary Judgment," Dkt. 73, which concerns the legal sufficiency of the Notice.

[6] Whether the $400.00 is paid by the beneficial shareholder to the DTC directly, or is paid to the brokers who then pay the $400.00 to the DTC for benefit of the beneficial shareholder, is not material. The simple fact is the beneficial shareholder must agree to the $400 DTC fee and that $400.00 is ultimately received or passed through to the DTC.

be followed by all involved parties, including the beneficial shareholder, the clearing firms (COR Clearing in this case), as well as the brokers (Just2Trade in this case). DTC had such absolute power because only Cede & Co., as the only stockholder of record, could assert dissenters' rights or authorize changes to the stock certificate, and Cede & Co. is simply the nominee name used by the DTC (i.e., for all practical purposes the DTC and Cede & Co. are one and the same). <u>Smith v. Kisorin USA, Inc</u>, supra.

With such absolute control came the legal obligation to "exercise due care in accordance with reasonable commercial standards" to perfect the beneficial shareholder's dissenter/appraisal rights. UCC §8-506. To properly assert dissenters' rights in Nevada, the steps were fairly simple and only required (a) timely delivery of a payment demand, and (2) timely delivery of stock certificates. NRS 92A.440.

The TP-P, as was the case with all beneficial shareholders with CEC shares held of record by Cede & Co., had absolutely no say or control over how and when Cede/DTC ordered and delivered the stock certificate – they were simply at the mercy and whim of the DTC. See <u>Exhibit A</u> attached: Sammons Affidavit at #11. It was not, however, incompetence on the part of the DTC that caused the problem - it was simply DTC's willful decision to comply with its own schedule for delivery of the certificate rather than comply with the delivery schedule mandated by the Nevada Legislature that caused the problem.

The DTC took the following actions in Nevada: (1) delivered or caused to be delivered two letters (on Cede & Co. letterhead, signed by Cede & Co., and addressed to CEC in Nevada) to the CEC corporate agent in Carson City, NV, asserting dissenters' rights for the 650,000 TP-P shares of CEC,

7

(2) ordered or caused to be ordered a new 650,000 share certificate from the CEC stock transfer agent in Las Vegas, NV, to be printed and shipped to the DTC in New York on August 8, 2013, and (3) caused the new 650,000 share certificate to be delivered to the CEC stock transfer agent in Las Vegas, NV, on August 26, 2013.  Facts #11-16.

The Notice in this case required delivery of the stock certificates "within 30 days of the date this Notice is delivered."  See NRS 92A.440(5)("The stockholder who does not ... deposit his or her certificates where required ... by the date set forth in the dissenter's notice, is not entitled to payment for his or her shares under this chapter.")

Pursuant to NRS 75.150, regarding communications between corporations and shareholders, "delivery" is defined by statute as the date of mailing.  The Notice was mailed on July 11, 2013.  Excluding the last Saturday and Sunday as required by NRCP 6(a), the 30 day deadline for delivering the stock certificate would have been Monday, August 12, 2014.  The TP-D failed to deliver the stock certificate by that date.  Fact #16.

While principles of substantial compliance should apply to the Nevada Dissenters Rights' Statutes,[7] Cede/DTC can offer no possible reasonable excuse or justification for delivering the certificate 14 days after the deadline.

Although Cede/DTC received the Notice on or about July 15th, Cede/DTC inexplicably waited over one week before beginning to accept dissent requests from beneficial shareholders.  Fact #7.  Even more shocking, Cede/DTC did not bother to order the certificate until August 8th – 16 days after receiving the request to assert dissenters' rights by the TP-P.  Fact #13.  These irresponsible delays made delivery of the certificate by the August 12,

---

[7] Cf. NRS 92A.500(2)(a)("**substantially comply** with the requirements of 92A.300-500")

2013 deadline problematic, although in this case timely delivery could have been accomplished despite such delays because Quicksilver printed and shipped the certificate to the DTC on the very same day it received the request (August 8, 2013). Fact #14.

The DTCC (which could only have been authorized by Cede & Co., the stockholder of record) instructed Quicksilver to print the 650,000 share certificate in the name of Cede & Co. on August 8, 2013 and to send it FedEx to the DTC in New York. Fact #13. The newly printed 650,000 share certificate in the name of Cede & Co., beneficially owned by the TP-P, was shipped overnight on August 8, 2013 and was delivered by FedEx to the DTC on August 9, 2013. Fact #14.

As sophisticated financial professionals, Cede/DTC certainly knew or should have known that the deadline for delivery of the certificate was August 12, 2013. The DTC could have simply instructed Quicksilver to hold the new certificate when printed on August 8, 2013 for CEC until Cede/DTC provided any necessary paperwork (such as a transmittal letter) by fax or courier service. See a copy of a "Transmittal Letter" attached to CEC MPSJ, Aff. of Mr. Shinderman, Exh. 5 at pg. 4, Dkt 71.

The DTC instead decided to instruct Quicksilver to deliver the new certificate to the DTC in New York (actually the DTCC on behalf of Cede/DTC gave this instruction). Fact #13. Quicksilver, no doubt aware of the August 12, 2013 deadline, printed and shipped the new certificate that very same day (August 8, 2013). So Cede/DTC in New York had the 650,000 share certificate in the name of Cede & Co. in their possession the very next day on August 9, 2013. Fact #14. Simple overnight or even two day delivery by UPS, FedEx, USPS, or any number of courier services could have easily delivered the

certificate to CEC in Nevada by the August 12, 2013 deadline. Cf. <u>Nelson v. Frank E. Best Inc.</u>, 768 A. 2d 473, 490 (Del. Ch. 2000)( "any number of courier services"). Instead the DTC, cavalierly ignoring the impending deadline, sent the certificate to COR. COR, equally cavalierly, simply sat on the certificate for 2 ½ weeks until it finally delivered the certificate to the CEC stock transfer agent Quicksilver on August 26, 2013 – some 14 days after the statutory deadline.

And as already noted, *infra* n. 7, this is simply not a case where the principles of substantial compliance can come to the rescue, such as would be appropriate where a reasonable effort was attempted or where unforeseeable circumstances interfered. Cf. <u>Matter of Fair Value of Shares of Bank of Ripley</u>, 399 S.E. 2d 678, 683-686 (W. Va. 1990) <u>Parrillo v. RISAT INC</u>, No. PB 07-1697 (R.I. Superior Ct 2007)(collecting cases).

An intentional and willful failure to comply with a statutory requirement can never appropriately be excused as substantial compliance – a "good faith" effort to comply or "good cause for the error" is always a necessary element of substantial compliance. Cede/DTC could have easily met the 30 day deadline for delivery of the certificate – they simply chose to follow their own unhurried "standard procedures" for delivery of the certificate and ignored their obligations under Nevada law.

Cede/DTC deliberately, willfully, and recklessly decided to ignore the simple requirements of the Nevada Dissenters' Rights Statutes (requiring no more than timely delivery of a demand letter and timely delivery of a certificate) and as a result the TP-P have lost their right to judicial appraisal of the "fair value" for the 650,000 shares of CEC stock taken unilaterally from them.

The only relevant material undisputed facts needed to support granting this motion for summary judgment are as follows:

1. A dissenters' rights notice regarding a reverse split by CEC was delivered to the stockholder of record, Cede & Co. (the nominee name of the DTC), on July 11, 2013 (date of mailing), regarding 650,000 shares of CEC beneficially owned by the TP-P.
2. The notice required delivery of a payment demand letter and a stock certificate by Cede/DTC to CEC in Nevada within 30 days or by August 12, 2013 for any beneficial shareholder wanting to dissent and obtain judicial appraisal of their shares of CEC.
3. Although the payment demand letter was delivered to CEC in Nevada prior to the deadline, the stock certificate for the 650,000 shares of CEC was not delivered to CEC in Nevada until August 26, 2013, 14 days after the deadline.
4. No "good faith" effort was made by Cede/DTC to deliver the 650,000 share stock certificate by the deadline, nor was there any extenuating circumstance involved; therefore, as a result and pursuant to NRS 92A.440(5), Cede/DTC caused the TP-P to lose their right to judicial appraisal of their 650,000 shares of CEC.

**WHEREFORE**, summary judgment should be entered and a declaratory judgment entered to the effect that: "Cede/DTC inexcusably failed to *timely* deliver the TP-P's 650,000 share certificate of China Energy Corporation ("CEC") to CEC in Nevada as required by the Nevada Dissenters' Rights Statutes, and as a result the TP-P lost their right to judicial appraisal of their CEC shares."

Respectfully submitted,

/s/ Michael Sammons
_____
Michael Sammons, pro se

## Certificate of Service

A true and exact copy was mailed or emailed to all parties this 17 day of MAR, 2014.

Michael Sammons