Michael Sammons, pro se
15706 Seekers St
San Antonio, TX 78255
michaelsammons@yahoo.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

China Energy Corporation
    Plaintiff

    **vs.**                    Case No.   3:13-CV-562-MMD-VPC

Alan Hill, et al
    Defendants

**Elena Sammons**
**Michael Sammons**
    **Third-party TP-P**

    **vs.**

**Cede & Co., et al**
    **Third–Party Defendants**

## THIRD-PARTY PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGEMENT AS TO DEFENDANT COR CLEARING'S LIABILITY FOR UNTIMELY DELIVERY OF STOCK CERTIFICATE

Comes the Third-Party Plaintiff ("TP-P"), Michael Sammons, and moves this Honorable Court to issue a partial summary judgment and a declaration against Defendant COR Clearing, LLC ("COR") as follows:

> "COR Clearing, LLC, which willingly accepted responsibility for delivering a stock certificate by a dissenter's rights deadline under Nevada law, failed, without cause or excusable neglect, to deliver the

TP-P's 650,000 share certificate of China Energy Corporation ("CEC") to CEC in Nevada by the date required by the Dissenter's Rights Notice, and (a) as a consequence, under Nevada law, the TP-P are not entitled to judicial appraisal of their CEC shares, and (b) COR is liable to the TP-P for any damages proximately caused by such failure to timely deliver the stock certificate as required by Nevada law."

The material facts are undisputed, and no additional discovery is necessary for this partial summary judgment and declaration against COR on the narrow issue of whether COR delivered a stock certificate by the deadline required of it by a Dissenter's Rights Notice and Nevada law and the effect thereof.  F.R.C.P. 56(a); 28 U.S.C. §2201

## SUMMARY OF THE ARGUMENT (citations omitted)

China Energy Corporation ("CEC") effected a 12,000,000 to 1 reverse cash-out split on July 3, 2013 in Nevada.  Pursuant to a Dissenter's Rights Notice ("Notice") delivered by CEC to all shareholders of record, any shareholder of record who wanted to dissent from the $.14/share offered for each share and seek judicial appraisal of their shares, was required to do two simple things: (a) deliver a payment demand to CEC by August 15, 2013, and (b) deliver a stock certificate to CEC by August 15, 2013.[1]  NRS 92A300-500

Cede & Co. ("Cede"), the nominee name used by Defendant Depository Trust Company ("DTC"), was the stockholder of record for 650,000 shares of CEC beneficially owned by the TP-P.  As a matter of law, only the stockholder of record, in this case Cede, could assert dissenter's rights

TP-P informed their broker Just2Trade, which informed COR, the clearing firm for Just2Trade, that the TP-P wanted to pursue a dissent for

---

[1] CEC maintains that the deadline was August 12, 2013.  Whether the deadline was August 12, 2013 or August 15, 2013 is not a material difference since COR failed to meet either deadline date.

judicial appraisal of their 650,000 shares of CEC.  TP-P were informed by Just2Trade that DTC charged $400 to have Cede, their nominee and the stockholder of record, handle the dissent, and TP-P agreed to pay the $400 fee.

The Cede dissenter's rights letter was prepared on Cede letterhead, signed by Cede, and delivered to COR.  The Cede dissenter's rights letter on behalf of the TP-P was timely delivered by COR to CEC in Nevada prior to the August 15, 2013 deadline.

The stockholder of record, Cede, was also required to timely deliver to CEC in Nevada a stock certificate for the 650,000 shares of CEC.  **"The stockholder who does not ... deposit his or her certificates where required ... by the date set forth in the dissenter's notice, is not entitled to payment for his or her shares under this chapter."**  NRS 92A.440(5).

The Notice was received by Cede on July 16, 2013, and required delivery of the dissenter's rights demand letter from Cede, as well as delivery of the 650,000 share stock certificate from Cede, within 30 days of delivery of the Notice, or by August 15, 2013.

Cede/DTC had a duty under UCC §8-506 to act with due care in asserting dissenter's rights on behalf of the COR and the TP-P:

UCC §8-506: "EXERCISE RIGHTS AS DIRECTED BY ENTITLEMENT HOLDER.  A securities intermediary shall exercise rights with respect to a financial asset if directed to do so by an entitlement holder.  A securities intermediary satisfies the duty if: ... (1) the securities intermediary acts with respect to the duty as agreed upon by the entitlement holder and the securities intermediary, or (2) in the absence of agreement, the securities intermediary ... exercises due care in accordance with reasonable commercial standards to follow the direction of the entitlement holder."

On August 8, 2013, DTCC, the parent company of DTC, on behalf of Cede, requested that Quicksilver Stock Transfer in Las Vegas ("Quicksilver"), the CEC stock transfer agent, print a new certificate for the 650,000 shares and further instructed Quicksilver to ship the certificate to the DTC in New York. Quicksilver printed the new certificate and shipped the certificate to DTC that same day.  The DTC received the certificate in New York on August 9, 2013, and forwarded the certificate to COR in Omaha in plenty of time for COR to deliver the certificate to CEC in Nevada before the August 15, 2013 deadline.

DTC and COR had agreed that COR would handle all deliveries to CEC in Nevada *required of Cede* to properly perfect dissenter's rights on behalf of the TP-P, including the demand letter and the certificate.  Although COR could have easily delivered the certificate to CEC in Nevada by the August 15, 2013 deadline, COR, without cause or excusable neglect, did not deliver the certificate to CEC in Nevada until August 26, 2013, well past the certificate delivery deadline required by the Notice and Nevada law.

The TP-P seeks a partial summary judgment or declaration that, due to the unexcused 11 day delay in delivering the 650,000 share stock certificate to CEC, the TP-P are "not entitled to payment for his or her shares under this chapter", NRS 92A.440(5), and COR is liable for any damages proximately caused by such failure to timely deliver the certificate to CEC.[2]

---

[2] TP-P's damages proximately caused by COR's failure to comply with Nevada law would include: (a) the loss attributable to the loss of the right to judicial appraisal of their 650,000 shares of CEC stock (which would be the difference between the $.14/share offered and the "fair value" per share as determined by the court), (2) the significant expense of defending the lawsuit filed by CEC in Nevada against the TP-P, and (3) any costs and attorney fees imposed upon the TP-P if CEC prevails in the Nevada lawsuit.  As to the latter two damage issues, the failure of COR to timely deliver the stock certificate caused the TP-P to be sued and the TP-P had no choice but to incur significant legal expenses to defend themselves in the Nevada lawsuit.

## UNDISPUTED FACTS

(1)     On July 11, 2013, China Energy Corporation ("CEC") effected a 12,000,000 to 1 cash-out reverse split, thereby eliminating all shareholders other than the CEO and majority shareholder, Mr. Wenxiang Ding, a resident and citizen of China.  See Exhibit A, attached: Aff. of Alan Shinderman.  All other shareholders were to be cashed out at $.14/share.

(2)     CEC expert Rand Curtiss opined that although the liquidation value of CEC was $2.29/share and the going concern value was $4.72/share, a 97% discount down to $.12/share for "fair value" needed to be applied due to currency exchange concerns[3] and the low market price[4].   The Court is requested to take judicial notice of the evaluation which is available on the SEC website as a public filing.[5]

(3)     Cede, the nominee name used by DTC, was the shareholder of record for 650,000 shares of CEC held by Just2Trade in a retirement account in the name of Elena Sammons, and to which Michael Sammons and Elena Sammons held a fully vested and equal community property financial interest.  See Exhibit B, COR Decl. of Colette Rex ("COR Decl."), at #5, attached.

---

[3] Which Sammons solved by seeking "fair value" in Chinese yuan rather than U.S. dollars. See Sammons Payment Demand letter to CEC.  Exhibit G, attached, at Exh. B attached thereto.

[4] Of course, equating "fair value" with "fair market value" is clearly improper under American Ethanol v. Cordillera Fund, 252 P. 3d 663, 668 n. 3 (Nev. 2011) ("The district court misapplied the term "fair market value." "Fair market value" and "fair value" are two separate concepts.")

[5] The CEC valuation Report by Rand Curtiss was submitted to the SEC as part of the reverse split review process, and can be found on the sec.gov website under China Energy Corporation, as an exhibit to a "Definitive Information Statement" filed May 3, 2013.  See In re. Silicon Graphics, 970 F. Supp. 746, 758 (ND Cal 1997)(finding that the court may take judicial notice of "'the contents of relevant public disclosure documents required to be filed with the SEC ...'")

(4)   As a matter of law in Nevada, only the stockholder of record (Cede in this case) may assert dissenter's rights for the benefit of beneficial shareholders (TP-P in this case). <u>Smith v. Kisorin USA</u>, Inc., 254 P. 3d 636 (Nev. 2011)(assertion of dissenter's rights by beneficial shareholder invalid – only Cede & Co., as shareholder of record, may assert dissenter's rights.)

(5)   CEC's stock transfer agent, Quicksilver Stock Transfer, LLC of Las Vegas, NV ("Quicksilver"), mailed a Dissenter's Rights Notice ("Notice") to Cede on Thursday, July 11, 2013.  See <u>Exhibit A</u>, attached: Aff. of Alan Shinderman #4, Exh. 5; a copy of the Notice is attached to Aff. of Alan.  Shinderman, Exh. 5 at pg. 11.

(6)   To properly assert dissenter's rights in Nevada, the steps are fairly simple and only required (a) delivery of a dissenter's rights or appraisal demand (payment demand) letter signed by the shareholder of record (Cede in this case) to CEC in Nevada by the date specified in the Notice, and (b) delivery of stock certificates, if any, by the shareholder of record (Cede) to CEC in Nevada also by the date specified in the Notice.  NRS 92A.440

(7)   Cede received the Dissenters' Rights Package on July 16, 2013.  See <u>Exhibit C</u> attached (DTCC information sheet created "07/16/2013" regarding CEC reverse split and dissent option.)   DTCC is the parent company of Defendant DTC. See <u>Exhibit L</u> attached, Decl. of Peter Gleeson.

(8)   Just2Trade, the stockbroker through which the TP-P held shares of CEC in the name of Cede, informed the TP-P that if they desired to dissent and qualify for judicial appraisal of their CEC shares, they would have to agree to the $400 DTC fee, whereupon  Just2Trade would notify COR which would notify DTC/Cede to proceed with the dissent.  See <u>Exhibit D</u>, Aff. of Michael

Sammons, attached, and Exhibit E, attached (DTC published Fee Schedule), and Exhibit K, attached (explanation email from Just2Trade).

(9)     The TP-P were informed on July 23, 2013 that the DTC would begin accepting dissent requests from beneficial shareholders within 24-48 hours. The DTC began accepting such requests the next day, and the TP-P, having agreed to the $400 DTC fee, instructed their brokers on or about July 24, 2013 to instruct Cede/DTC to proceed with the dissent.  See Exhibit D, Aff. of Michael Sammons, attached.

(10)   "A stockholder who receives a dissenter's rights notice ... must ... deposit the stockholder's certificates, if any, in accordance with the terms of the notice."  NRS 92 A.440(1)(c).  The Notice in this case required that stock certificates be delivered to CEC within 30 days of delivery of the Notice.  See copy of the Notice attached to Exhibit. A, Aff. of  Shinderman, Exh. 5 at pg. 11.

(11)   On July 29, 2013, Cede, the shareholder of record for the 650,000 shares held for the TP-P, the beneficial shareholders, prepared a demand letter addressed to CEC in Nevada asserting "appraisal (or dissenters') rights" on behalf of the TP-P.

(12)   DTC sent the Cede letter, which was on Cede letterhead and signed by Cede, to COR.   Cede/DTC and COR had agreed that most, if not all, deliveries to CEC in Nevada, *required of Cede as the stockholder of record* for the TP-P's 650,000 shares of CEC, would be performed by COR.[6]

(13)   On August 1, 2013 COR sent the original Cede letter (received from Cede/DTC) overnight UPS to CEC in Nevada with tracking number

---

[6] The purpose of this agreement was apparently to enable Cede/DTC to avoid being sued in Nevada for any errors associated with Cede's asserting dissenter's rights on behalf of the TP-P.  This scheme fails as explained in the "Motion for Summary Judgment as to Cede/DTC," Dkt. 183.

1Z86V2691392456787.  See <u>Exhibit B</u>: COR Decl. #9 and Exh. D attached thereto.

(14)   The letter was delivered by the UPS to a wrong address on August 2, 2013.  The letter was finally delivered to CEC's corporate agent in Carson City, NV, on August 14, 2013.  See <u>Exhibit F</u>: UPS delivery history for tracking #1Z86V2691392456787 (showing delivery on 8/2 and redelivery on 8/14).

(15)   On August 9, 2013 the TP-P delivered to CEC (a) a copy of the July 29, 2013 Cede letter asserting dissenters/appraisal rights and (b) a letter from Elena Sammons which noted and corrected two typos in the Cede letter.  See <u>Exhibit G</u>, attached: Aff. of Michael Barr, at pg. 2 #8-9, and Ex. C attached to the Barr affidavit (copy of both letters).

(16)   On August 7, 2013 the TP-P delivered a payment demand letter for the "fair value" ($3 million) of their 650,000 shares of CEC to CEC in Nevada.[7]  See <u>Exhibit G</u>, attached: Aff. of Michael Barr, at pg. 2 #6-7, and Ex. C (copy of letter) attached to the Barr affidavit.

(17)   On August 8, 2013, the Depository Trust & Clearing Corporation ("DTCC"), the corporate parent of the DTC, instructed Quicksilver in Las Vegas, NV, to print a new stock certificate for the 650,000 shares of CEC (in the name of Cede & Co.) and ship the certificate to the DTC in Brooklyn, New York.  See <u>Exhibit H</u>, attached: Aff. of Jodi Godfrey, at pg. 2 #6, and Ex. B-2 (copy of letter) attached to the Godfrey affidavit.

---

[7]  As a matter of Nevada law, this assertion of dissenter's rights by beneficial shareholders was of questionable effect, as it is well settled that only Cede, as stockholder of record, had the right and authority to assert and perfect dissenter's right to appraisal.  <u>Roam-Tel Partners v. AT&T Mobility Wireless Operations Holdings, Inc.</u>, CA-5745-VCS (Del. Ch. Dec 17, 2010)("**only record owners have the authority to demand and perfect appraisal rights**"); accord <u>Dirienzo v. Steel Partners Holdings LP</u>, No. 4506-CC (Del. Ch. Dec 8, 2009)( "This Court has repeatedly held that **only stockholders of record have standing to pursue an appraisal.** ")

(18) The 650,000 share certificate in the name of Cede was sent FedEx overnight by Quicksilver in Nevada to the DTC in New York on August 8, 2013; see Exhibit H, attached: Aff. of Jodi Godfrey, at pg. 2 #6.

(19) The certificate was then shipped from the DTC in New York to COR in plenty of time to allow COR to deliver the certificate to CEC in Nevada by the August 15, 2013 deadline required by the Notice and Nevada law, but COR made no effort to timely deliver the certificate to CEC in Nevada by the deadline required by the Notice.

(20) It was not until Friday, August 23, 2013, that the 650,000 share certificate in the name of Cede & Co. was sent by UPS from COR in Omaha to CEC in Nevada, and delivery was not made until Monday, August 26, 2013. See Exhibit I, attached: Cover letter from COR Clearing dated August 23, 2013; UPS tracking and proof of delivery on August 26, 2013.

(21) Delivery of the 650,000 share certificate on August 26, 2013, which was 11 days late, failed to comply with the Notice which required delivery within 30 days of delivery of the Notice.

(22) In a letter dated September 25, 2013, CEC informed the TP-P that due to the untimely delivery of the 650,000 share certificate[8] that the TP-P had lost their dissent/appraisal rights pursuant to the Nevada Dissenter's Rights Statutes. See Letter of Rejection, attached as Exhibit J.

---

[8] COR correctly notes that CEC not only relies upon untimely delivery of the stock certificates for denial of appraisal rights, but also the fact that the TP-P demanded payment in Chinese yuan rather than U.S. dollars. (CEC is, after all, a Chinese company with all its assets, revenues, and profits in Chinese yuan). In any event, this claim is frivolous, which explains why CEC has never pressed it in this case. Cf. "CEC MPSJ," Dkt. 71. The Nevada Foreign-Money Claims Act, NRS 17.410-660, explicitly allows legal claims and demands to be in foreign currencies. Those statutes provide that even if a claim is erroneously expressed in a foreign currency, the remedy is simply conversion into a demand for U.S. Dollars. *Id.*

## MEMORANDUM OF POINTS AND AUTHORITIES

The TP-P, with 650,000 shares of CEC held of record by Cede, wanted to dissent and obtain a judicial appraisal of their shares of CEC.  Exhibit B, COR Decl. #3.  TP-P had to agree to pay a $400 DTC assertion of dissenter's rights fee.  Undisputed Facts ("Fact") #8.  As a matter of law, only the stockholder of record (Cede in this case) could assert dissenters' rights.  Smith v. Kisorin USA, Inc., 254 P. 3d 636 (Nev. 2011)(assertion of dissenters' rights by beneficial shareholder invalid – only Cede & Co., as shareholder of record, may assert dissenters' rights.) Roam-Tel Partners v. AT&T Mobility Wireless Operations Holdings, Inc., CA-5745-VCS (Del. Ch. Dec 17, 2010)("**only record owners have the authority to demand and perfect appraisal rights**"); accord Dirienzo v. Steel Partners Holdings LP, No. 4506-CC (Del. Ch. Dec 8, 2009) ("This Court has repeatedly held that **only stockholders of record have standing to pursue an appraisal.** ")[9]

The DTC charged $400 to assert dissenter's rights for the sole financial benefit of the TP-P.  Whether the $400 is paid by the beneficial shareholder to the DTC directly, or is paid to the brokers who then pay the $400 to COR, who then pay the $400 to DTC for benefit of the beneficial shareholder, is not

---

[9] These Delaware cases are persuasive authority in Nevada in shareholder dissent cases. NRS 92A.300-.500 governs the rights of stockholders who dissent from certain corporate actions in Nevada, and these statutes were "patterned after, or are identical to, the provisions of the 1984 Model Business Corporation Act." American Ethanol, Inc. v. Cordillera Fund, 252 P. 3d 663 (Nev. 2011).  "Because the Legislature relied upon the Model Act and the Model Act relies heavily on New York and Delaware case law, we look to the Model Act and the law of those states in interpreting the Nevada statutes." Cohen v. Mirage Resorts, Inc., 62 P.3d 720, 726 n. 10 (Nev. 2003).

material.  The undisputed fact is the beneficial shareholder (TP-P) must agree to the $400 DTC fee and that $400 ultimately goes in the pocket of the DTC.[10]

Cede & Co. is the nominee name used by the DTC to register securities. Fact #3.  Because only Cede, as the stockholder of record, had the legal power to assert dissenters' rights, Cede/DTC had full and complete control over the process.  See Exhibit K attached, Letter from Just2Trade:

> "Because the shares are held at the DTCC and our clearing firm is a DTCC member, we are required to follow DTCC guidelines.  They have stipulated that in order to process your appraisal or dissenter's rights, the shares are required to be re-issued in certificate form ... This brings the total fees so far to $275 plus the DTCC's fee of $400.

The DTC procedures for asserting dissenter's rights had to be followed by the clearing firms (COR Clearing in this case).  DTC had such absolute control because only Cede, as the stockholder of record, could assert dissenters' rights or request a stock certificate.  Smith v. Kisorin USA, Inc, supra.   The TP-P, as beneficial stockholders, had to rely solely upon the TP-D to assert and perfect dissenter's rights to appraisal.

Cede/DTC had the legal obligation to "exercise due care in accordance with reasonable commercial standards" to perfect the beneficial shareholder's

_____

[10] If, pursuant to the published DTC fee schedule, the contract was between the DTC and the TP-P, with Just2Trade and COR acting simply as a conveyance for the $400 to DTC, then a direct contract existed between DTC and the TP-P.  However, if DTC charged COR $400 and the direct contract was between DTC and COR, and COR simply passed the charge down the line to Just2Trade and the TP-P, then the TP-P were the intended third-party beneficiaries of the $400 contract between DTC and COR.  Flickinger v. Harold C. Brown & Co., Inc., 947 F. 2d 595 (2nd Circuit 1991)

dissenter/appraisal rights.  UCC §8-506.[11]  <u>Sutter Opportunity Fund 2 LLC v.</u>
<u>Cede & Co.</u>, 838 A. 2d 1123, 1128 (Del. Ch. 2003).

However, as with the $400 contract, the issue arises as to whether the
duty Cede/DTC owed pursuant to UCC §8-506 was a duty owed only to its
member participant COR or was also a duty directly owed to the TP-P.   Under
similar circumstances the <u>Sutter</u> court held that Cede was acting as a direct
agent of the beneficial shareholders:

> "In proposing the Plaintiffs' amendment, Cede & Co. was acting as the
> Plaintiffs' agent, as it is required to do by law. "Agency is the
> relationship which results from the manifestation of consent by one
> person to another that the other shall act on his behalf and subject to his
> control, and consent by the other so to act."  Among other things, the
> Plaintiffs' power to instruct Cede & Co. to act on their behalf in
> submitting their amendment and Cede & Co.'s legal duty to follow that
> instruction shows an agency relationship.  838 A. 2d  at 1128-1129

As in the case at bar, the Plaintiffs in <u>Sutter</u> could not directly request
Cede act on their behalf.  In <u>Sutter</u> the request had to go from the Plaintiffs to
their Broker (Paine Webber) and then presumably to the broker's clearing
agent (which clearing agent was a DTC participant), and then finally to
Cede/DTC.  Nevertheless the <u>Sutter</u> court found an "agency relationship" and a
direct duty between Cede and the beneficial shareholders.

TP-P, as beneficial shareholders, were the only party entitled to
financially benefit from asserting dissenter's rights, but Cede was the only

---

[11] UCC §8-506: "EXERCISE RIGHTS AS DIRECTED BY ENTITLEMENT HOLDER.  A securities
intermediary (Cede/DTC in this case) shall exercise rights with respect to a financial asset
if directed to do so by an entitlement holder (COR in this case).  A securities intermediary
satisfies the duty if: ... (1) the securities intermediary acts with respect to the duty as
agreed upon by the entitlement holder and the securities intermediary, or (2) in the
absence of agreement, the securities intermediary ... exercises due care in accordance with
reasonable commercial standards to follow the direction of the entitlement holder."

entity with the legal right and authority to assert and perfect such dissenter's right to appraisal.  Regardless of the layers in between (clearing firms and/or stockbrokers), and as the <u>Sutter</u> court found, a direct agency relationship existed between Cede and the beneficial shareholders (TP-P in this case).

Therefore, we have ***four*** alternative grounds for direct liability of Cede/DTC to the TP-P: (1) a direct $400 contract between the DTC and the TP-P; (2) as the intended third-party beneficiary to the $400 contract between DTC and COR; (3) a direct "agency relationship" between Cede and the TP-P as held in <u>Sutter</u>; and (4) an intended third-party beneficiary to the UCC § 8-506 duty owed by Cede/DTC to COR.

In short, Cede/DTC explicitly agreed, and were obligated, to comply with the requirements of the Nevada Dissenter's Rights Statutes in asserting dissenters' rights for the sole benefit of the TP-P.  The steps required of Cede/DTC to fulfill their duty were fairly simple and only required (a) delivery of a payment demand by the date specified in the Notice, and (b) delivery of stock certificates by the date specified in the Notice.  NRS 92A.440.

The Notice in this case required delivery of the stock certificates "within 30 days of the date this Notice is delivered."  See NRS 92A.440(5)("The stockholder who does not ... deposit his or her certificates where required ... by the date set forth in the dissenter's notice, is not entitled to payment for his or her shares under this chapter.")

The DTC parent company DTCC (which could only have been authorized by Cede, the stockholder of record) instructed Quicksilver to print the 650,000 share certificate in the name of Cede & Co. on August 8, 2013 and to send it FedEx to the DTC in New York.  Fact #17.   The newly printed 650,000 share certificate in the name of Cede & Co., beneficially owned by the TP-P, was

shipped overnight on August 8, 2013 and was delivered by FedEx to the DTC on August 9, 2013.  Fact #18.

So Cede/DTC in New York had the 650,000 share certificate in the name of Cede & Co. in their possession on August 9, 2013.   While the DTC could have simply then forwarded the certificate to the CEC in Nevada, the DTC depended, by agreement, on COR to then forward the certificate to CEC in Nevada by the August 15, 2013 deadline.

COR's liability arises due to COR's willingly agreeing to, and acting as, an agent of Cede/DTC for the purpose of timely delivering the certificate to CEC in Nevada as was necessary to perfect Cede's dissenter's rights, and COR's failure to timely deliver that certificate.

DTC delivered the certificate to COR with plenty of time to deliver the certificate to CEC in Nevada by the August 15, 2013 deadline by UPS, FedEx, USPS, or any number of courier services.  Cf. Nelson v. Frank E. Best Inc., 768 A. 2d 473, 490 (Del. Ch. 2000)( "any number of courier services").  Instead COR cavalierly, without cause or excusable neglect (or any excuse whatsoever) simply sat on the certificate for two weeks until it finally delivered the certificate to the CEC stock transfer agent Quicksilver on August 26, 2013 – well past the deadline specified in the Notice and required by Nevada law.

And this is simply not a case where the principles of substantial compliance can come to the rescue, such as for excusable neglect, or where a reasonable effort was attempted, or where unforeseeable circumstances interfered with the timely delivery of a certificate.  Cf.  Matter of Fair Value of Shares of Bank of Ripley, 399 S.E. 2d 678, 683-686 (W. Va. 1990) Parrillo v. RISAT INC, No. PB 07-1697 (R.I. Superior Ct 2007)(collecting cases).

An intentional and willful refusal to comply with a mandatory legal requirement can never appropriately be excused as substantial compliance – a good faith effort to comply or excusable neglect is always a necessary element of substantial compliance; or stated in another way, substantial compliance as a tool of equity can never come to the rescue of deliberate, knowing, and willful intent to disregard the law.   COR could have easily met the 30 day deadline for delivery of the certificate required under Nevada law – COR simply chose to follow their own unhurried "standard procedures" for delivery of the certificate and deliberately ignored Nevada law.

COR willingly agreed to act as the delivery agent for Cede/DTC and was therefore obligated to make a reasonable attempt to deliver the certificate to CEC in Nevada by the August 15, 2013 deadline required by the Notice.  Cede/DTC delivered the certificate to COR in plenty of time to allow COR to do so.   COR deliberately, willfully, and recklessly refused to *timely* deliver the certificate to CEC in Nevada, without cause or excusable neglect. This violated the simple requirements of the Nevada Dissenters' Rights Statutes (requiring no more than timely delivery of a demand letter and timely delivery of a certificate).  COR, acting as a Cede/DTC agent, is therefore directly responsible for the fact that the TP-P lost their right to judicial appraisal of the "fair value" for their 650,000 shares of CEC stock, and COR is liable to the TP-P for any damages proximately caused by such loss.

## CONCLUSION

The only relevant material undisputed facts needed to support granting this motion for summary judgment and issuance of the declaration are as follows:

1. A dissenters' rights notice regarding a cash-out reverse split by CEC was delivered to the stockholder of record, Cede & Co. (the nominee name used by the DTC), on July 16, 2013, regarding 650,000 shares of CEC beneficially owned by the TP-P.

2. Cede, as the stockholder of record, had a duty to timely deliver the stock certificate to CEC in Nevada by August 15, 2013 and by agreement relied upon COR to make such timely delivery.

3. Although Cede/DTC delivered the certificate to COR in plenty of time for COR to *timely* deliver it to CEC in Nevada, COR, without cause or excusable neglect, willfully and deliberately ignored the August 15, 2013 deadline and waited until August 26, 2013, to finally deliver the certificate to CEC in Nevada.

4. COR, agent for Cede/DTC, did not deliver the 650,000 share stock certificate to CEC by the August 15, 2013 deadline required by the Notice and Nevada law; therefore, as a result and pursuant to NRS 92A.440(5), the TP-P are not entitled to judicial appraisal of their 650,000 shares of CEC, and COR is liable for any damages proximately caused by its failure to deliver the certificate by the August 15, 2013 deadline.

**WHEREFORE**, the TP-P are entitled to a partial summary judgment and a declaratory judgment as follows:

"COR Clearing, LLC, which willingly accepted responsibility for delivering a stock certificate by a dissenter's rights deadline under Nevada law, failed, without cause or excusable neglect, to deliver the TP-P's 650,000 share certificate of China Energy Corporation ("CEC") to CEC in Nevada by the date required by the Dissenter's Rights Notice, and (a) as a consequence, under Nevada law, the TP-P are not entitled to judicial appraisal of their CEC shares, and (b) COR is liable to the TP-P for any damages proximately caused by such failure to timely deliver the stock certificate as required by Nevada law."

Respectfully submitted,

*Michael Sammons*

Michael Sammons, pro se

Certificate of Service

A true and exact copy was mailed or emailed to all parties this
16 day of JUNE, 2014.

Michael Sammons