BRET F. MEICH
State Bar No. 11208
(bmeich@armstrongteasdale.com)
ARMSTRONG TEASDALE LLP
3770 Howard Hughes Parkway, Suite 200
Las Vegas, NV 89169
Telephone: (702) 678-5070
Facsimile: (702) 878-9995

PETER TEPLEY
(ptepley@rumberger.com), *admitted pro hac vice*
MEREDITH LEES
(mlees@rumberger.com), *admitted pro hac vice*
REBECCA BEERS
(rbeers@rumberger.com), *admitted pro hac vice*
RUMBERGER, KIRK & CALDWELL, PC
2204 Lakeshore Drive, Suite 125
Birmingham, AL 35209-6739
Telephone (205) 327-5550
Facsimile (205) 326-6786

Attorneys for Third-Party Defendant COR Clearing, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CHINA ENERGY CORPORATION,<br><br>                    Plaintiff,<br><br>vs.<br><br>ALAN HILL, et al.,<br><br>                    Defendants,<br><br>ELENA SAMMONS AND MICHAEL SAMMONS,<br>                    Third-Party Plaintiffs<br>vs.<br><br>CEDE & CO., THE DEPOSITORY TRUST COMPANY, AND COR CLEARING<br><br>                    Third-Party<br>                    Defendants. | 3:13-CV-562-MMD-VPC<br><br><br>**OPPOSITION TO PLAINTIFF CHINA ENERGY CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT I OF THE COMPLAINT AS TO THE SAMMONS DEFENDANTS** |

Third-Party Defendant COR Clearing, LLC ("COR") respectfully submits this Opposition to Plaintiff China Energy Corporation's ("CEC") Motion for Partial Summary Judgment on Count I of the Complaint as to the Sammons Defendants (Doc. # 71).

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

CEC's Motion for Partial Summary Judgment should be denied for four separate reasons. First, as the beneficial owner of uncertificated shares, Elena Sammons did not have to deposit share certificates in order to exercise her dissenter's rights. Second, CEC's Dissenters' Rights Notice (the "Notice") failed to comply with the requirements of Nevada law in that it failed to set a specific date for compliance. Third, even if CEC's Dissenters' Rights Notice – which at best provided a vague date range rather than a specific date – complied with Nevada law, the Notice was nonetheless so ambiguous that the Court (or fact-finder) could determine that Elena Sammons timely exercised her dissenter's rights. Finally, Nevada only requires substantial compliance with the dissenter's rights provisions, and Elena Sammons substantially complied with those provisions.

### FACTS

**Elena Sammons's CEC Stock**

Elena Sammons maintains an IRA account with Just2Trade, a securities broker-dealer for which COR serves as the clearing broker (the "Elena Sammons IRA"). *See* Doc. # 200 at 21, ¶¶ 2-3. In July 2013, Elena Sammons held 650,000 shares of China Energy Corporation ("CEC"), a domestic Nevada corporation, in the Elena Sammons IRA.[1] In its capacity as a clearing broker, COR is a participant in the Depository Trust Company ("DTC"). *Id.* at ¶ 4. The

---

[1] While this opposition focuses on the 650,000 shares held in the Elena Sammons IRA at Just2Trade, the arguments contained herein apply equally to the other CEC shareholders who also attempted to assert their dissenters' rights.

CEC shares for which Elena Sammons wanted to exercise dissenter's rights were not registered or held in the name of Elena Sammons IRA. Instead, as is common practice, they were registered in the name of DTC's nominee, Cede & Co. ("Cede"), also known as being held in "street name." DTC then credited COR's DTC participant account with an interest in 650,000 shares of CEC. Thus, the "street name" shares were legally held in the name of DTC's nominee Cede, but at all times were beneficially owned by Elena Sammons. *See* Doc. # 200 at 21, ¶ 5.

**CEC's Dissenters' Rights Notice**

On July 3, 2013, CEC announced a 12,000,000 to 1 reverse stock split, meaning that each 12,000,000 shares of old CEC would be exchanged for 1 share of new CEC. *See* Doc. # 71 at 3. Only one CEC shareholder, Fortune Place Holdings Limited ("Fortune Place"), a corporation organized under the laws of the British Virgin Islands, owned 12,000,000 or more CEC shares. *See* China Energy Corp., Amendment No. 2 to Schedule 14C (Schedule 14C Information Statement), at 2 (May 7, 2013). As a result of the stock split, it would become the sole shareholder of CEC. *See id.* The beneficial owner of 100% of the equity interests in Fortune Holdings was Wenxiang Ding, president of CEC. *See id.* CEC offered to pay 14 cents a share to each shareholder who did not dissent to the reverse stock split. *See* Doc. # 2-1 at ¶¶ 47-48.

CEC then issued a Dissenters' Rights Notice. *See* Doc. # 71-5. The Notice was undated and did not specify a deadline date for shareholders to assert their dissenters' rights. *See id.* at 11. CEC maintains that it mailed a copy of the Dissenters' Rights Notice to all shareholders of record, including to Cede. *See* Doc. # 71 at 4. However, Cede never received the Dissenters' Rights Notice that CEC allegedly mailed to it. *See* Doc. # 71-4 at 16. Instead, in order to even obtain a copy, Cede/DTC contacted the lawyers for CEC and was only able to obtain a courtesy

copy of the Notice on or about July 23, 2013. *Id. See also* Doc, # 71-4 at 10, 12.[2] Because Cede/DTC never received a mailed copy of the Dissenters' Rights Notice, Cede had no way of knowing when CEC allegedly mailed the Dissenters' Rights Notice.

**Elena Sammons Elects to Dissent**

Elena Sammons and her husband Michael Sammons (collectively, the "Sammons"), who owned 350,000 shares of CEC in his own account with TD Ameritrade, were not willing to accept the tender offer of 14 cents a share, and Elena Sammons, along with her husband, decided to exercise her dissenter's rights.

In late July 2013, COR received a request from Just2Trade to process dissenter's rights for the CEC shares held in the Elena Sammons IRA. *See* Doc. # 200 at 21, ¶ 3. Because the Dissenters' Rights Notice was undated, Ann Mechals, COR's then-Manager of Corporate Actions & Dividends, contacted CEC's transfer agent, Quicksilver Stock Transfer, LLC ("Quicksilver") to try and ascertain the deadline for asserting dissenter's rights to the reverse stock split and was informed by Quicksilver that the deadline was September 30, 2013. *See* Exhibit 1 at Exhibit B.

As part of its processing of the dissenter's rights request for Elena Sammons that it received from Just2Trade, COR also completed two templates that were available on DTC's website and followed the instructions provided for those templates. *See* Doc. # 200 at 21, ¶ 6. The first template COR completed was an "Appraisal Rights or Dissenters' Rights Instruction Letter." The second template was a letter from Cede care of DTC to CEC asserting appraisal or dissenters rights (the "Dissenter's Rights Letter"). *Id.*

On July 29, 2013, COR submitted a completed Appraisal Rights or Dissenter's Rights

---

[2]  Doc. # 71-4 at 10 states that Cede/DTC received the Dissenters' Rights Package from CEC's counsel on July 23, 2013, while Doc. # 71-4 at 16 states that Cede/DTC received it from CEC's counsel on July 22, 2013.

Instruction Letter and a completed Dissenter's Rights Letter to DTC. *Id*. at ¶ 7. Lori-Ann Trezza then partner of Cede, signed the Dissenter's Rights Letter for Cede, and DTC/Cede delivered the executed Dissenter's Rights Letter to COR. *Id*. at ¶ 8. On August 1, 2013, COR sent the executed Dissenter's Rights Letter by UPS Next Day Air to Wenxiang Ding, China Energy Corporation, 202 South Minnesota Street, Carson City, Nevada 89703. *Id*. at ¶ 9. CEC admits that it received Elena Sammons's Dissenter's Rights Letter before August 10, 2013. *See* Doc. # 71 at 4 (citing Doc. # 9 at 5, ¶ 12).

On August 6, 2013, COR learned that Elena Sammons's Dissenter's Rights Letter had two typographical errors, including a minor error in the number of shares for which dissenter's rights were being asserted. *See* Doc. # 200 at 22, ¶ 10. The Dissenter's Rights Letter said 650,800 shares, but the number should have been 650,000. *See id.* To correct the typographical error concerning the number of shares, on August 7, 2013, COR submitted letters to DTC asking it (a) to have Cede execute a letter, which COR provided, withdrawing the assertion for dissenter's rights for 650,800 shares (the "Withdrawal Letter") and (b) to have Cede execute a replacement Dissenter's Rights Letter, which COR provided, that among other things, asserted dissenter's rights for 650,000 shares of CEC (the "Revised Dissenter's Rights Letter"). *Id*. at ¶ 11. A partner of Cede then signed both the Withdrawal Letter and the Revised Dissenter's Rights Letter for Cede and DTC/Cede delivered the executed Revised Dissenter's Rights letter to COR. *Id*. at ¶ 12. On August 13, 2013, COR sent both the executed Withdrawal Letter and the executed Revised Dissenter's Rights Letter to China Energy's transfer agent in Nevada by UPS Next Day Air. *Id*. at ¶ 13; Doc. # 200 at 42.[3]

On August 5, 2013, Elena Sammons also sent her own demand letter to CEC, as did her

---

[3] In addition, on August 9, 2013, Elena Sammons sent a letter to CEC informing it of the typographical errors. *See* Doc. # 9 at 6, ¶ 13.

husband, demanding payment in Chinese Yuan instead of U.S. Dollars. She demanded 28.93 Chinese Yuan (the equivalent of $4.72) per share) for a total of $3,068,000. Doc. # 9 at 58.

Around August 8, 2013, Cede/DTC requested that Quicksilver **issue** a certificate for the 650,000 CEC shares registered to Cede that belonged to the Elena Sammons IRA (Doc. # 130-1 at 11). After COR received the certificate, Ann Mechals returned the certificate to DTC/Cede on August 19, 2013 because it was missing (a) the medallion stamp signature guarantee and (b) the stock power for Cede. *See* Exhibit 1 at Exhibit B. On August 22, 2013, COR received correspondence from DTC/Cede noting that the certificate was assigned to COR with the Cede signature stamp and that it was in good form to be submitted to CEC. *See id*. On August 23, 2013, COR sent CEC's transfer agent a letter enclosing the Original Certificate # 1032 of China Energy representing 650,000 shares; (2) a copy of the Letter of Appraisal (or Dissenter's Rights) dated August 7, 2013 (which had previously been submitted to China Energy and Quicksilver on August 1, 2013 and August 13, 2013); (3) the Original Stock Power form for COR Clearing; (4) Original Stock Power form for Delaware Charter Guarantee & Trust FBO: Elena Sammons R/O IRA; and (5) Original W-9 Delaware Charter Guarantee & Trust FBS: Elena Sammons R/O IRA. *See id*. at Exhibit C.

**CEC Argues That No CEC Shareholders Properly Dissented**

Five CEC beneficial shareholders, including Elena Sammons, attempted to assert their dissenters' rights for judicial appraisal of the value of their CEC shares. *See* Doc. # 201 at ¶ 22. It is CEC's position that every single shareholder who elected to dissent failed to do so properly and that none of these five dissenters timely deposited his or her CEC shareholder certificates. *See* Doc. # 2-1 at ¶¶ 22-24, 33-34. *See also* Exhibit 2 at 1-2, 4-5.

**STANDARD OF REVIEW**

"A party is entitled to summary judgment if the 'movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact." *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 818 (9th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Federal law governs whether or not the evidence that the parties proffer on summary judgment has raised a question of fact that precludes the entry of summary judgment. *Pyramid Techs.*, 752 F.3d at 818. A genuine issue of material fact exists if a "reasonable jury viewing the summary judgment record could find by a preponderance of the evidence that the plaintiff is entitled to a favorable verdict." *Id.* (quoting *Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010)).

"The evidence of the non-movant is to be believed and all justifiable inferences drawn in his favor." *Id.* "An inference is justifiable if it is rational or reasonable—it does not need to be the most likely or most persuasive inference." 752 F.3d at 818. "Where conflicting inferences may be drawn from the facts, the case must go to the jury." *Id.* (quoting *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1087 (9th Cir. 2000)) .

In short, "[s]ummary judgment is appropriate <u>only</u> if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Smith v. Clark County Sch. Dist.*, 727 F.3d 950, 954 (9th Cir. 2014) (punctuation and citations omitted, emphasis added). Here, CEC has not and cannot meet its burden and its motion for summary judgment should be denied.

## ARGUMENT

**I.  Elena Sammons Did Not Have to Deposit Her Share Certificates to Timely Assert Her Dissenter's Rights Because, as a Beneficial Owner, Her Shares Were Uncertificated.**

CEC's claim that Elena Sammons had to submit her share certificates prior to its argued

deadline to assert her dissenter's rights properly, *see* Doc. # 71 at 7-8, is incorrect. To assert her dissenter's rights properly under Nevada law, all Elena Sammons, as the beneficial owner of uncertificated CEC stock at the time of the CEC reverse stock split, had to do was return a timely demand for payment that certified that she was the beneficial owner and that she had Cede's permission to assert dissenter's rights for her shares. As shown herein and as CEC admits, Elena Sammons timely submitted a demand for payment that met these statutory requirements. As such, she properly asserted her dissenter's rights, and CEC is not entitled to partial summary judgment.

It is clear from the facts of this case that Elena Sammons's 650,000 shares were **not** certificated either at the time that CEC allegedly sent the Dissenters' Notice to the shareholders of record or at the time that Elena Sammons submitted her demand for payment. CEC has admitted the following facts that demonstrate that Elena Sammons held her shares as a beneficial shareholder and not a certificated share holder:

- "Neither of the Sammonses was a stockholder of record of CEC shares during the time period in question in this case; instead the record holder of the Sammonses' shares was Cede & Co." Doc. # 71 at 3.

- "Cede & Co is a clearing house that holds shares of stock in 'street name' for beneficial owners of stock." *Id*.

- "The purpose of holding stock in street names like Cede & Co. is to expedite stock transactions." *Id*.

These admitted facts clearly establish that Elena Sammons was merely the beneficial owner of the CEC stock held in the Elena Sammons IRA. *See Smith v. Kisorin USA, Inc.*, 254 P.3d 636, 638 (Nev. 2011) ("The Smiths' shares were held in street name by Cede & Co., the nominee for the Depository Trust Company. Thus, Cede & Co. was the stockholder of record, while the Smiths were the beneficial owners of the shares.") (footnote omitted). Shares of a corporation that are held in street name are not certificated shares. *See Apache Corp. v.*

*Chevedden*, 696 F. Supp. 2d 723, 724-25 (S.D. Tex. 2010) (explaining the role of the DTC and Cede). CEC **admits** Elena Sammons was not a stockholder of record and only held her CEC shares as a beneficial owner, *see* Doc. # 71 at 3, and thus Elena Sammons's shares were not certificated shares. As the *Apache* Court stated:

> It has been decades since publicly traded companies printed separate certificates for each share, sold them separately to the individual investors, kept track of subsequent sales of the shares, and maintained comprehensive lists identifying the shareholders, the number of the shares they held, and the duration of their ownership. Nor are securities certificates any longer traded directly by brokers on exchanges, with the shares recorded in the brokers' "street name" in a company's records.

696 F. Supp. 2d at 725. *See also In re President Casinos, Inc.* 502 B.R. 841, 849 (Bankr. E.D. Mo. 2013) ("Street name accounts also permit changes in beneficial ownership to be effected through book entries rather than the unwieldy physical transfer of securities certificates.").

After admitting the above-referenced facts which clearly demonstrate that Elena Sammons held her CEC shares as a beneficial owner, CEC still argues that her shares were actually certificated. *See* Doc. # 71 at 5. In an attempt to support this argument, CEC relies on the affidavit testimony of Wenxiang Ding stating that CEC never authorized the issuance of any uncertificated shares. *See* Doc. # 71-2 at 2, ¶ 3. However, CEC's own Dissenters' Rights Notice expressly and directly contradicts this testimony. The Notice explicitly states, in bold, capital letters: "**IF YOU HOLD ANY OF YOUR SHARES OF [*sic*] WITH A STOCKBROKER IN STREET NAME, YOU WILL RECEIVE AND SHOULD FOLLOW THE SEPARATE TRANSMITTAL INSTRUCTIONS FROM YOUR BROKER**." Doc. # 71-5 at 5 (emphasis in original). Therefore, while CEC may have issued and while Cede may have held some certificated shares, Elena Sammons, as a beneficial owner of CEC stock, did not own certificated shares. As is customary in the industry, as a beneficial owner, she merely held the shares in street name only. *See Smith*, 254 P.3d at 638; *Apache*, 696 F. Supp. 2d at 725.

In addition, even if Elena Sammons had held certificated shares at the time of CEC's reverse stock split, as CEC would have this Court believe, then, under Section 92A.430 of the Nevada Revised Statutes, CEC had a statutory duty to send Elena Sammons a Dissenters' Rights Notice directly because she would have been considered a shareholder of record. *See Smith*, 254 P.3d at 640 (finding that corporations must send dissenter's rights notice packages to stockholders of record – *i.e.*, holders of certificated stock – and not to beneficial owners holding stock only in street name). CEC has already admitted it did not send Elena Sammons a Dissenters' Rights Notice. *See* Exhibit 2 at 3 (stating that CEC sent Dissenters' Rights Notice packages to the following shareholders of record residing outside of China: (1) Cede & Co.; (2) Robert Drewett; (3) Matthew Hayden; (4) William D. Heurlin; (5) Kingdom Building Inc.; (6) Johnny Lai; and (7) Scott Powell). CEC cannot have it both ways. Either Elena Sammons was a certificated shareholder of record who was entitled to receive a Dissenters' Right Notice package directly from CEC or she was a beneficial shareholder who owned the shares in street name only and thus held uncertificated shares of CEC.

As a beneficial owner of the CEC shares, Elena Sammons did not have to deposit her share certificates with CEC or Quicksilver prior to the deadline. Instead, to comply with Section 92A.440 of the Nevada Revised Statutes, all a beneficial owner of shares has to do is to make a demand for payment with the permission of the stockholder of record. *See* Nev. Rev. Stat. § 92A.440(1); 92A.440(3). Specifically, Section 92A.440 requires that a shareholder who wishes to assert dissenter's rights must: (1) "demand payment," Nev. Rev. Stat. § 92A.440(1)(a); (2) "certify whether the stockholder or the beneficial owner on whose behalf he or she is dissenting, as the case may be, acquired beneficial ownership of the shares before the date required to be set forth in the dissenter's notice for this certification," Nev. Rev. Stat. § 92A.440(1)(b); and (3)

"deposit the stockholder's certificates, **if any**, in accordance with the terms of the notice," Nev. Rev. Stat. § 92A.440(1)(c) (emphasis added). The statute goes on to clarify, "[o]nce a stockholder deposits that stockholder's certificates, **or in the case of uncertified [*sic*] shares makes demand for payment**, that stockholder loses all rights as a stockholder." Nev. Rev. Stat. § 92A.440(3) (emphasis added). Later, the statute again makes it clear that, in the case of uncertificated shares, the beneficial owner need only make demand for payment: "the stockholder who does not demand payment **or deposit his or her certificates where required**, each by the date set forth in the dissenter's notice, is not entitled to payment for his or her shares under this chapter." Nev. Rev. Stat. § 92A.440(5) (emphasis added).

Moreover, the Model Business Corporation Act, upon which the Nevada's corporations statutes are based,[4] makes clear the procedure beneficial owners who do not have certificated shares must follow to exercise dissenter's rights:

> (b) A beneficial shareholder may assert appraisal rights as to shares of any class or series held on behalf of the shareholder only if such shareholder:
>
> > (1) submits to the corporation the record shareholder's written consent to the assertion of such rights no later that the date referred to in section 13.22(b)(2)(ii); and
> >
> > (2) does so with respect to all shares of the class or series that are beneficially owned by the beneficial shareholder.

*See* Am. Bar Ass'n, *Model Business Corporations Act* § 13.03(b)(1-2), *available at* https://users.wfu.edu/palmitar/ICBCorporationsCompanion/Conexus/ModelBusinessCorporatio nAct.pdf (last visited Aug. 20, 2014). In fact, the Official Comments to Section 13.03 specifically note that, at the same time the beneficial shareholder submits the required notice with the consent of the stockholder of record, the beneficial shareholder "**may want to obtain**

---

[4] Nevada's corporations statute was modeled on (and, in some cases, is identical to) the Model Business Corporations Act. *See Am. Ethanol, Inc. v. Cordillera Fund, L.P.*, 252 P.3d 663, 665 (Nev. 2011) ("NRS 92A.300-.500 governs the rights of stockholders who dissent from certain corporate actions . . . These statutes were patterned after, or are identical to, the provisions of the 1984 Model Business Corporation Act.") (quoting *Cohen v. Mirage Resorts, Inc.*, 62 P.3d 720, 726 (Nev. 2003)) (punctuation omitted).

**certificates for the shares so that they may be deposited pursuant to section 13.23**" but is not required to do so. (emphasis added). Section 13.23(a) and (c) of the Model Business Corporation Act also makes it clear that that depositing the stock certificates is required only in the case of certificated shares:

> (a) A shareholder who receives notice pursuant to section 13.22 and who wishes to exercise appraisal rights must sign and return the form sent by the corporation **and, in the case of certificated shares, deposit the shareholder's certificates in accordance with the terms of the notice by the date referred to in the notice**.
> . . . Once a shareholder deposits that shareholder's **certificates or, in the case of uncertificated shares, returns the signed forms**, that shareholder loses all rights as a shareholder . . . . (c) A shareholder who does not sign and return the form and, in the case of certificated shares, deposit that shareholder's share certificates where required . . . shall not be entitled to payment under this chapter.

(emphasis added).

Therefore, to properly assert her dissenter's rights, Elena Sammons only needed to submit a demand for payment with the permission of the shareholder of record (here, Cede) prior to the deadline in the Notice.[5] CEC's argument that *Smith v. Kisorin* holds that a beneficial owner must timely demand payment **and** deposit share certificates is misplaced. *See Smith*, 254 P.3d at 638-39. There, the Nevada Supreme Court actually stated: "Neither of the Smiths included with her demands the stock certificates **or a written consent from the stockholder of record, Cede & Co.** The *Smith* court did **not** state that **both** the stock certificate **and** a written consent from Cede were required under Nevada Revised Statute Section 92A.440.

Incredibly, CEC without citation to any law or other authority, is attempting to argue that because Cede ordered from Quicksilver a stock certificate for Elena Sammons shares prior to the alleged dissenters' deadline, Elena Sammons's shares were converted to certificated shares. *See* Doc. # 71 at 5. However, as a beneficial shareholders of CEC stock at the time the Notice was allegedly sent out, Elena Sammons did not have to submit a stock certificate to

---

[5] As shown *infra*, the Notice was defective under Nevada law for failing to specify a date establishing the deadline for asserting dissenter's rights.

assert her dissenter's rights properly. The Official Comments to the Model Business Corporation Act state that a beneficial holder "may want to obtain certificates of the shares" but is not required to do so in order to assert dissenter's rights. *See* Am. Bar Ass'n, *Model Business Corporations Act* § 13.03 (b)(1-2), Official Cmt., *available at* https://users.wfu.edu/palmitar/ICBCorporationsCompanion/Conexus/ModelBusinessCorporationAct.pdf (last visited Aug. 20, 2014)).

Here, however, CEC has **admitted** that on August 1, 2013, its "statutory agent received a [ ] demand letter from Cede & Co on behalf of Dr. Sammons in which she attempted to assert dissenters' rights as to the 650,000 shares that she claims to own by virtue of her Rollover IRA." Doc. # 71 at 4 (citing Doc. # 9 at 5, ¶ 12; *id.* at 57). Therefore, CEC admits that its statutory agent timely received a letter from Cede asserting dissenter's rights on behalf of Elena Sammons. *See id.* Accordingly, Elena Sammons timely asserted her dissenter's rights, and CEC is not entitled to summary judgment.

## II.   CEC's Dissenters' Rights Notice Failed to Comply with Nevada's Requirements for Setting a Date for Compliance.

CEC's Dissenters' Rights Notice failed to comply with the requirements of Nevada law because it did not set forth a specific date for dissenters to return their notice. Therefore, any failure to comply with CEC's unspecified compliance date cannot serve as a basis for denying Elena Sammons's dissenter's rights, and CEC is not entitled to summary judgment.

### A.   The Requirements of Nevada Revised Statute Section 92A.430.

Before this Court can determine whether Elena Sammons complied with the statutory dissenter's rights requirements, it must first be established that CEC's Notice complied with the requirements set out in the Nevada statutes. To comply with Nevada's statutory scheme, "[t]he

1
2

dissenter's notice [must not only] be sent no later than 10 days after the effective date of the corporate action" at issue, Nev. Rev. Stat. § 92A.430(2), but it must also:

3
4
5

> Set a <u>date</u> by which the subject corporation must receive the demand for payment, which may not be less than 30 nor more than 60 days after the notice is delivered and state that the stockholder shall be deemed to have waived the right to demand payment with respect to the shares unless the form is received by the subject corporation <u>by such specified date</u> . . . ."

6

Nev. Rev. Stat. § 92A.430(2)(d) (emphasis added).

7

**B.    The Contents of CEC's Dissenters' Rights Notice.**

8
9
10
11
12
13
14

The Dissenters' Rights Notice that CEC allegedly sent to its shareholders of record did not contain a specific date for compliance. In fact, the Notice was completely undated. *See* Doc. # 71-5 at 11. Rather than containing any specific date, the Notice stated, in pertinent part, "any stockholder of [CEC] who held less than 12,000,000 pre-split shares on July ____, 2013 (the 'Effective Date') is entitled to dissent to the reverse stock split . . . ." *Id.* The Notice went on to conclude,

15
16
17
18

> In order to maintain eligibility to exercise dissenters' rights under Chapter 92A, you must take the following actions within 30 days of the date that this Notice is delivered: (i) deliver the completed Demand Letter; (ii) certify whether you acquired beneficial ownership of the shares before the date set forth in the Demand Letter; and (iii) deliver the certificates representing the dissenting shares to the Company.

19
20

> You shall be deemed to have waived the right to demand payment with respect to the shares unless the Demand Letter is received by the Company within 30 days of the date that this Notice is delivered.

21

Doc. # 71-5 at 11.

22

**C.    CEC's Notice Failed to Comply with Nevada Law.**

23
24
25
26
27

CEC's argument that its Dissenters' Rights Notice was "effective" at the time that it was placed in the United States Mail pursuant to the general provisions of Nevada corporations law and that therefore the last date for the exercise of dissenter's rights was 30 days from the day it allegedly mailed the dissenters' rights package is misplaced. *See* Doc. # 71 at 11 (relying on

28

14

Nev. Rev. Stat. § 75.150(7)(b)). Whether the dissenters' rights package was "effective" on the date of mailing does not answer the question of whether CEC's notice complied with Nevada's requirements for what must be contained in a proper dissenters' rights package.[6] As noted above, Nevada law requires that a proper package must "set a date" by which dissenting shareholders must exercise their dissenter's rights and that it must inform shareholders that they have waived the right to dissent if they do not exercise their rights by that "specified date." Nev. Rev. Stat. § 92A.430(2)(d). While CEC's Notice at most possibly contained a date range (if one was able to ascertain the start date of the range), it did not "set" a "specified date" by which the dissenters' rights package must be returned. *Compare* Doc. # 71-5 at 11 *with* Nev. Rev. Stat. § 92A.430(2)(d). In fact, CEC's Notice is not even dated. Therefore, the Notice failed to comply with Nevada law requiring that it set a "specified date," and any failure on the part of Elena Sammons to exercise her dissenter's rights within a vague and unclear date range should be excused.

CEC's reliance on the Nevada Supreme Court's decision in *Smith*, *supra*, in arguing that its Notice fulfilled the Nevada statutory requirements is again misplaced. In *dicta*, the Nevada Supreme Court noted that the notice at issue in *Smith* provided "that the dissenting stockholder must make a written demand for a 'fair value' appraisal to Kisorin within 45 days after the date of mailing of the dissenter's notice." 254 P.3d at 638. In *Smith*, Cede & Co., the stockholder of record in that case, was "provided . . . with the dissenter's notice" on the date that Kirsorin mailed the notice to all record stockholders and was notified of that date. *Id.* In affirming the trial court's summary judgment order on other grounds, the Nevada Supreme Court explicitly

---

[6] Moreover, under the same statute CEC relies upon, a document is only "effective" upon "delivery" if the document is "in a comprehensible form." Nev. Rev. Stat. § 75.150(7). As demonstrated herein *infra*, CEC's Dissenters' Rights Notice was not comprehensible but rather was ambiguous and susceptible to more than one interpretation. Therefore, CEC's mailing of the Dissenters' Rights Notice did not render it effective under Nevada law because the Notice itself was incomprehensible.

noted that Kisorin had placed the beneficial shareholder on notice of the date for complying with the dissenter's notice "by placing Cede & Co. [the stockholder of record] on notice of the merger" on the date that the 45-day clock for dissenting began ticking. *Id.* at 639.

Here, in contrast, neither the stockholders of record nor the beneficial stockholders were informed that the date of "delivery" from which CEC believed the 30-day period to dissent began to run was the date that CEC mailed the Dissenters' Rights Notice packages. Moreover, unlike in *Smith*, neither the stockholders of record nor the beneficial stockholders were provided with the date of mailing of the Notice. That information was patently unavailable from the face of the dissenter's notice and, based on the evidence in the record, was not provided directly to Cede or any other stockholder of record (and certainly was not provided to any beneficial stockholders). Accordingly, CEC's Dissenters' Rights Notice did not "[s]et a date by which the subject corporation must receive the demand for payment." Nev. Rev. Stat. § 92A.430(2)(d). Moreover, there is evidence in the record from which it can be reasonably inferred that Cede/DTC never received the mailed copy of the Dissenters' Rights Notice at all and could not possibly have even ascertained the date of mailing. *See* Doc. No. # 71-4 at 10-12.

The undefined date range – "30 days from the date of delivery" – that CEC provided does not equate to the "specified date"[7] required under Nevada law. It was CEC's burden to set a specific date – not an undefined period – by which to assert dissenter's rights. CEC could have dated the notice, mailed it the same day, and set the deadline on a specific date thirty days from its mailing. It failed to do so and thus failed to comply with Nevada law. Indeed, the Official

---

[7] Indeed, the first definition for the word "date" on www.dictionary.com is "a particular month, day, and year at which some event happened or will happen." *See* http://dictionary.reference.com/browse/date?s=t. *Black's Law Dictionary* defines "date" as "1. The day when an event happened or will happen; 2. A period of time in general; 3. An appointment at a specified time." *Black's Law Dictionary* (9th ed. 2009). It is clear from the majority (all but one) of these definitions that "date" – particularly when used in this context – requires something specific or specified. The phrase "within 30 days of the date that this Notice is delivered" does not fall within the vast majority of the generally-acceptable definitions of the term "date" as used in the Nevada statute and certainly does not qualify as a "specified date" as the Nevada statute requires.

Comments to the Model Business Corporations Act, upon which Nevada's corporation statutory scheme is based, state that the dissenter's "notice must specify the date by which the shareholder's executed form must be received by the corporation, which date must be at least 40 days but not more than 60 days after the appraisal notice is sent." Am. Bar Ass'n, *Model Business Corporations Act* § 13.22, Official Cmt., *available at* https://users.wfu.edu/ palmitar/ICBCorporations-Companion/Conexus/ModelBusinessCorporationAct.pdf (last visited Aug. 20, 2014).

Simply stated, CEC's Notice did not have the specificity required under the Nevada statute and that was present in *Smith* – nor did CEC provide the information to Cede that Kisorin did in the *Smith* case. Importantly, the precise language of the dissenter's rights notice in *Smith* is not recited in the Nevada Supreme Court's opinion. What is made clear, however, is that there, Cede, the stockholder of record, was explicitly made aware of the last date that dissenter's rights could be properly exercised under the terms of the notice. CEC's Notice, as discussed herein, did not even provide this most elementary detail. Therefore, the Nevada Supreme Court's decision in *Smith* offers no support to CEC here.

**III.    Even if CEC's Notice Fulfilled Nevada's Statutory Requirements, It Was Nonetheless Sufficiently Ambiguous Such That This Court May Determine That Elena Sammons Timely Exercised Her Dissenter's Rights.**

CEC's Dissenters' Rights Notice was defective under Nevada law because it failed to set a "specified date" for compliance. However, even <u>if</u> CEC's provision of a date range in the Notice complied with Nevada law (which it does not), it was nonetheless so ambiguous that it requires this Court's interpretation to determine if Elena Sammons complied with the Notice, and as noted below there are sufficient reasons for this Court to determine that Elena Sammons timely exercised her dissenter's rights.

17

### A.   Under Nevada Law, Courts Are Free to Interpret Ambiguous Documents and to Construe Them Against the Drafter.

The Dissenters' Rights Notice is ambiguous because it fails to list a date when the Notice was mailed, to establish a date for asserting dissenters' rights, or to define "delivery." The ambiguity of the Dissenters' Rights Notice is evidenced by the fact that even CEC's transfer agent, Quicksilver, informed COR that the deadline for compliance was September 30, 2013. *See* Exhibit 1 at Exhibit A. Clearly, no one – not even CEC's statutory agent – was able to ascertain the compliance deadline.

In Nevada, "[w]hether or not a document is ambiguous is a question of law for the court," and a document "is ambiguous if it is reasonably susceptible to more than one interpretation." *Margrave v. Dermody Props., Inc.*, 878 P.2d 291, 293 (Nev. 1994) (citations omitted). More specifically, a document is ambiguous if it is "obscure in meaning, through indefiniteness of expression, or having a double meaning." *Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 366 (Nev. 2013) (quotations and punctuation omitted). In Nevada, "it is a well settled rule that in cases of doubt or ambiguity, a [document] must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language." *Williams v. Waldman*, 836 P.2d 614, 619 (Nev. 1992) (quotation and punctuation omitted). "[A]n interpretation which results in a fair and reasonable contract is preferable to one that results in a harsh and unreasonable contract." *Shelton v. Shelton*, 78 P.3d 507, 510 (Nev. 2003) (quotation and punctuation omitted).

### B.   Dissenter's Rights Statutes Are to Be Construed in Favor of Dissenting Shareholders.

In addition to construing ambiguous documents against the drafter, courts across the country have interpreted dissenter's rights statutes in favor of dissenting individual shareholders in keeping with the spirit and purpose of such laws, which is to protect individual, minority

18

shareholders against corporate action. As a well-respected treatise has explained:

> Statutory provisions giving dissenting stockholders the right to have their stock appraised and sold to the corporation under specified circumstances are generally construed liberally in favor of the dissenting shareholders, at least if no prejudice to the corporation is shown. Such statutes are entitled to a reasonable construction, rather than a rigid and technical construction. Because such statutes are designed to provide an equitable, simple, and expeditious remedy to dissenting stockholders, they [are] not to be construed strictly against the dissenting shareholders.

18A Am. Jur. 2d *Corporations* § 686 (2014) (footnotes omitted). *See also Fidelity Bank, Nat'l Ass'n v. Aldrich*, 998 F. Supp. 717, 725 (N.D. Tex. 1997) ("When modern corporate statutes began to permit certain mergers to occur with less than unanimous shareholder consent, ' . . . it was realized that it was necessary to afford some relief to dissenters (and) the purpose of these statutes is to protect the property rights of dissenting shareholders from actions by majority shareholders which alter the character of her investment.' *Fletcher on Corporations*, § 5906.10 (Perm. Ed. 1996); *see also* Model Bus. Corp. Act §§ 80, 81 (1979). Therefore, a number of courts have applied a liberal interpretation to the procedural requirements of dissenters' rights statutes in order to affect the statutory purpose of providing the [corporation] with notice of possible dissident shareholders and of paying dissenters the fair value of her investment. *Fletcher Cyclopedia Corporations*, § 5906.70 (Perm. Ed. 1996).").

Specifically, the New Jersey Supreme Court has noted that that state's statute "serves a minority shareholder protection role" and "is designed to afford a simple and expeditious remedy to the dissenting shareholder," and that, for these reasons, the dissenter's rights statute "should be liberally construed in favor of the dissenting shareholders." *Lawson Mardon Wheaton, Inc. v. Smith*, 734 A.2d 738, 747-48 (N.J. 1999) (quotations omitted). Other state courts that have had the opportunity to opine on the purpose of such statutes and the method in which these statutes must be interpreted are in accord. *See Raab v. Villager Indus., Inc.*, 355 A.2d 888, 891 (Del. 1976) (appraisal and dissenter's rights statutory requirements "are to be

liberally construed for the protection of objecting stockholders, within the boundaries of orderly corporate procedures and the purpose of the requirement"). *See also Chokel v. First Nat'l Supermarkets, Inc.*, 660 N.E.2d 644, 647, 649 (Mass. 1996) (quoting *Raab*, finding that the shareholder had sufficiently exercised his dissenter's rights, and observing that the "statute should be construed liberally in favor of the stockholder").

Citing numerous state courts interpreting dissenter's rights statutes around the country, the West Virginia Supreme Court has observed that "dissenter's rights statutes are construed favorably toward the shareholder, particularly where there is no prejudice to the corporation. As a corollary, such statutes are given a reasonable construction rather than a rigid and technical one. Doubts arising from a lack of precision or accuracy in the statute should, where possible, be resolved in favor of the dissenting shareholder." *Matter of Fair Value of Shares of Bank of Ripley*, 399 S.E.2d 678, 682 (W. Va. 1990). *See also Sarrouf v. New England Patriots Football Club*, 492 N.E.2d 1122, 1129 (Mass. 1986) ("The statute is designed to provide an equitable, simple, and expeditious remedy to dissenting stockholders. It should not be construed strictly against them").

C.    **CEC's Dissenters' Rights Notice Was Ambiguous, and Elena Sammons Should Not Be Penalized for Failure to Comply with CEC's Interpretation of This Vague and Incomprehensible Document.**

In light of Nevada's policy of requiring judges to interpret ambiguous documents and resolve ambiguities against the drafter and in light of the policies of states across the country to apply dissenter's rights statutes liberally and in favor of shareholders, this Court's interpretation of CEC's dissenter's rights notice should not result in the forfeiture of Elena Sammons's right to dissent. The time period set forth in CEC's Notice was not clear. A review of the face of CEC's Notice establishes that it did not provide a specific time for compliance. Moreover, the evidence in the record confirms the ambiguity of CEC's notice. Indeed, CEC contends that **none** of the

20

dissenting CEC shareholders exercised their dissenters' rights within the timeframe that CEC claims that the notice set out for dissenting. *See* Doc. # 2-1 at 7, ¶¶ 33-34.

The ambiguity in CEC's Notice should be resolved in favor of Elena Sammons (as well as the other dissenting CEC shareholders) and against the drafter CEC and in keeping with the well-established principle that dissenter's rights statutes should be interpreted and applied in favor of dissenting shareholders. Therefore, any failure on the part of Elena Sammons to comply with CEC's interpretation of the ambiguous deadline it purports was contained in the Dissenters' Rights Notice should not operate to preclude Elena Sammons from exercising her rights. Indeed, given the vagueness of CEC's Notice, a fact-finder could determine Elena Sammons timely asserted her dissenter's rights.

## IV.   This Court Should Appraise Elena Sammons's Shares, as She Asserted Her Dissenter's Rights in Substantial Compliance with Nevada Law.

Regardless of this Court's assessment of CEC's Dissenters' Rights Notice's compliance with Nevada law or its interpretation of the Notice in light of any ambiguities and the purpose of Nevada's dissenter's rights statute, Elena Sammons should be deemed to have complied with that statute, as she was in substantial compliance with it. CEC's argument that a dissenter cannot use the theory of "substantial compliance" with Nevada's dissenter's rights law, asserting that "the *Smith* case strongly rejects that doctrine," Doc. # 130 at 12, is patently incorrect. In *Smith v. Kisorin*, the Nevada Supreme Court **never once** mentions the doctrine of substantial compliance, and thus it certainly does not "strongly reject[]" it. *See Smith v. Kisorin USA, Inc.*, 254 P.3d 636 (Nev. 2011). Rather, in *Smith*, the Nevada Supreme Court merely concluded that corporations need only distribute dissenter's rights notice to shareholders of record as opposed to beneficial yet unrecorded shareholders whose identity the corporation does not know. 254 P.3d at 640. The *Smith* court stated that it was basing its holding on a reasonable interpretation of the

21

statue and that to require that notice be sent to unknown and unrecorded beneficial shareholders would result in an "impracticable" and "absurd" interpretation of the statute. *See id.* Indeed, the Nevada Supreme Court actually indicated that it may be willing to find that a stockholder's exercise of dissenter's rights substantially complied with the statute even though it was late but found that it would be futile to "waive" the "demand deadline" requirement in *Smith* because the Smiths' exercise of their dissenter's rights failed to fulfill the other statutory requirements. *See* 254 P.3d at 640 n.3.[8]

In fact, CEC's argument that the theory of "substantial compliance" with dissenter's rights laws is not permitted under Nevada law is directly belied by the **only** Nevada case that addresses the theory of "substantial compliance" in conjunction with Nevada's dissenter's rights statutes. In *Steiner Corp. v. Benninghoff*, 5 F. Supp. 2d 1117, 1123 (D. Nev. 1998), another judge of this court appraised the value of shares of a corporation, finding that the dissenting shareholders had "**substantially complied with all the requirements of the dissenters' rights provisions**." Therefore, in sharp contrast to CEC's claims, there is direct precedent from this very court that a dissenting shareholder can be entitled to appraisal of his or her shares upon substantial compliance with the Nevada dissenter's rights statute.

Here, CEC maintains that the deadline for timely submitting a complete dissenter's rights notice was 30 days after the General Notice Package was allegedly mailed on July 11, 2013 – which was Saturday, August 10, 2013 (the next business day being Monday, August 12, 2013). *See* Doc. # 71 at 4. CEC admits that on August 1, 2013, it received a demand letter from Cede, the shareholder of record, on behalf of Elena Sammons but that this letter did not contain her

---

[8] Moreover, it is important to note that the shareholders in *Smith* submitted incomplete notices of dissent more than two and a half months after the deadline for submitting notices – a vastly different situation than what occurred with regard to Elena Sammons's notice here, rendering the facts of *Smith* easily distinguishable from those here.

share certificates. *See id.* at 4-5.[9] On August 23, 2013, COR sent Quicksilver (CEC's transfer agent) Elena Sammons's certificate for her 650,000 shares of CEC. Exhibit 1 at Exhibit C. Here, CEC admittedly had notice that Elena Sammons was exercising her dissenter's rights for her 650,000 shares of CEC <u>prior</u> to the vague and unclear 30-day deadline that CEC now seeks to define and strictly enforce. *See* Doc. # 71 at 4. Indeed, CEC asserts that the only hindrance to her exact compliance with the dissenter's rights statute is the fact that she did not submit to CEC her share certificate within the prescribed time period (and that requirement is not applicable to Elena Sammons here, *see* discussion *supra*). *See* Doc. # 71 at 4-5. Thus, when the evidence and all reasonable inferences from it are taken in the light most favorable to Elena Sammons, *see Pyramid Techs.*, 752 F.3d at 818, she must be found to have substantially complied with Nevada's dissenter's rights statute, particularly given that CEC received a certificate for her shares on August 23, 2013, less than two weeks after CEC's claimed deadline for compliance. The application of the doctrine of substantial compliance is particularly appropriate here given that CEC had knowledge of Elena Sammons's desire and intention to exercise her dissenter's rights <u>within</u> the time period that CEC asserts is applicable. As previously noted, courts typically construe dissenter's rights statute liberally and in favor of dissenting shareholders and especially when "no prejudice to the corporation is shown." 18A Am. Jur. 2d *Corporations* § 686 (2014). Because, as in *Steiner*, Elena Sammons substantially complied with the provisions of the Nevada dissenter's rights statute, CEC's motion for partial summary judgment must be denied.

## CONCLUSION

As shown herein, there are genuine issues of material fact that preclude entry of

---

[9] Under Nevada's dissenter's rights statute, Dr. Sammons was not required to submit her share certificates along with her demand letter. *See* Section I *supra*.

summary judgment on Count I of CEC's claims against Elena Sammons. In fact, as shown herein, the facts support the opposite conclusion – that Elena Sammons **did** properly and timely assert her dissenter's rights. Therefore, CEC's motion for summary judgment must be denied, as it is not entitled to a judgment as a matter of law on Count I as to Elena Sammons.

Respectfully submitted this the 26th day of August, 2014.

> BRET F. MEICH (SBN 11208)
> ARMSTRONG TEASDALE, LLP
> 3770 Howard Hughes Parkway, Suite 200
> Las Vegas, NV 89169
> Telephone: (775) 322-7400
> Facsimile: (775) 322-9049
>
> PETER TEPLEY, admitted *pro hac vice*
> MEREDITH LEES, admitted *pro hac vice*
> REBECCA BEERS, admitted *pro hac vice*
> RUMBERGER, KIRK & CALDWELL, P.C.
> 2204 Lakeshore Drive, Suite 125
> Birmingham, AL 35209-6739
> Telephone (205) 327-5550
> Facsimile (205) 326-6786
>
> By:  /s/ *Meredith Jowers Lees*
> Meredith Jowers Lees
>
> *Counsel for Third-Party Defendant COR Clearing, LLC*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I, Meredith Jowers Lees, certify that on August 26, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the electronic mail notice list.

A copy was also served by First Class U.S. Mail, postage prepaid on the following individuals:

Elena Sammons
15706 Seekers St.
San Antonio, TX 78255

Randy Dock Floyd
4000 Goff Road
Aynor, SC 29551

Jun He
231 Split Rock Road
The Woodlands, TX 77381

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed August 26th, 2014, at Birmingham, Alabama.

By:  /s/ *Meredith Jowers Lees*
Meredith Jowers Lees

7142504.6