Michael Sammons, pro se
15706 Seekers St
San Antonio, TX  78255
michaelsammons@yahoo.com

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

China Energy Corporation
    Plaintiff

vs.　　　　　　　　　　　　　　　**Case No.  3:13-CV-562-MMD-VPC**

Alan Hill, et al
    Defendants

**OBJECTION TO** "PLAINTIFF CEC'S REPLY TO THRID-PARTY DEFENDANT COR CLEARING, LLC'S OPPOSITION TO CEC'S MOTION FOR PARTIAL SUMMARY JUDGEMENT ON COUNT 1 OF THE COMPLAINT AS TO THE SAMMONS DEFENDANTS"

Comes the Defendant-Third Party Plaintiff, Michael Sammons, and objects[1] to "PLAINTIFF CEC'S REPLY TO THRID-PARTY DEFENDANT COR CLEARING, LLC'S OPPOSITION TO CEC'S MOTION FOR PARTIAL SUMMARY JUDGEMENT ON COUNT 1 OF THE COMPLAINT AS TO THE SAMMONS DEFENDANTS," **Dkt. 253**, for the following reasons:

---

[1] The Court may, of course, simply disregard the offending portions of the CEC (second) reply brief; however, the Sammonses believe that with their arguments herein, that the currency issue raised by CEC is now fully and fairly (and finally) briefed and warrants a decision to avoid unnecessary delay in the case.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

For the very first time, in its supplemental reply brief to COR's supplemental opposition (both supplemental to Sammons original opposition to the CEC MPSJ, Dkt. 71), CEC finally gets around to actually briefing a currency issue it raised in the Complaint. CEC presents pages of argument that its MPSJ should be granted because "The Sammonses' Demand (was) in Chinese Currency." Dkt. 253 at pg. 12.

The following is the entire CEC reference to this issue in the CEC MPSJ, Dkt. 71, pg. 4 n. 6:

> "The Sammonses have failed to meet other requirements of NRS Chapter 92A, including, for example, **their failure to assert a demand in U.S. dollars**. CEC reserves the right to present arguments regarding the Sammonses' other failures if that should be necessary **at a later date**." (emphasis added)

The "**at a later date**" turned out to be the final pages of a supplemental reply brief, calculated to give the pro se Sammonses no chance to respond, and this new argument is therefore improper:

> "The courts have characterized this tactic in a variety of ways-all negative. **Blind-siding, gamesmanship, and sandbagging** are the most commonly used epithets. Regardless of the name applied, the gambit has no place in the judicial system. Loading-up on a reply brief effectively results in a one-sided presentation, which is hopelessly inconsistent with the very premise on which the adversary system is based. In addition to being unfair to one's opponent, the tactic of saving everything for last adversely affects the accuracy of the judicial process, which depends on comprehensive presentations by both sides. <u>Autotech Tech. Ltd. Partnership v. Automationdirect.com, Inc.</u>, 235 F.R.D. 435, 437 (N.D. Ill. 2006) (*citing* authority).

Ethical issues aside, the Sammonses, in the interest of moving this case along, accept the currency issue as ripe for decision:

### The Payment Demand in Chinese Yuan was Effective, Even if Superfluous

CEC argues that the Sammons payment demands were invalid or void because the Sammons demands were for Chinese yuan rather than U.S. dollars.

The threshold question is whether the Sammons "payment demand" letters for their 350,000 shares and 650,000 shares were required at all, given the fact that Cede & Co., the stockholder of record, had already delivered demand letters for appraisal rights. See e.g. Dkt. 223 and 233.  What if the Sammonses had never sent their demand letters?  Or as CEC maintains here, sent invalid or void letters?  Would the Cede & Co. demand letters for appraisal rights, standing alone, have been sufficient to assert and perfect "dissenters' rights?"  The answer is not only in the affirmative, but in fact only the Cede & Co. appraisal letters were legally authorized.

The Sammonses, as beneficial stockholders, were not entitled to dissent or present payment demands; only Cede & Co., the stockholder of record for the Sammons shares, could legally dissent and deliver appraisal demands. Smith v. Kisorin, 254 P. 3d 636 (Nev. 2011)(citing Enstar Corp. v. Senouf, 535 A. 2d 1351 (Del. 1987)).  For this reason alone the Sammons demand letters were invalid or void.  Accord Roam-Tel Partners v. AT&T Mobility Wireless Operations Holdings, Inc., CA-5745-VCS (Del. Ch. Dec 17, 2010)("**only record owners have the authority to demand and perfect appraisal rights**")

As the court in <u>Dirienzo v. Steel Partners Holdings LP</u>, No. 4506-CC (Del. Ch. Dec 8, 2009) explained:

> "This Court has repeatedly held that **only stockholders of record have standing to pursue an appraisal.** Consistent with that principle, the Court has held that a *beneficial owner* of shares has no right to demand appraisal ..." (emphasis added)

These Delaware cases are persuasive authority in Nevada.[2]

NRS 92A.440(1) requires a stockholder of record (Cede & Co. in this case) "who wishes to exercise dissenters' rights" to: (a) Demand payment; (b) certify (when shares purchased)[3]; and (c) deliver certificates, if any.

Since on the date Cede & Co. delivered the appraisal demand letters CEC stock certificates did not yet exist (they were printed later[4]), see Dkt. 233, all that was required to perfect dissenters' rights was delivery of the Cede & Co. letters asserting "dissenters' rights." And once dissenters' rights are perfected, even a subsequent error as serious as a share tender does not vitiate the attached right to appraisal. <u>Alabama By-Products v. Cede & Co.</u>, 657 A. 2d 254, 263 (Del. 1995)("once appraisal rights have been perfected, the corporation is properly on notice of which shareholders are seeking the

---

[2] NRS 92A.300-.500 governs the rights of stockholders who dissent from certain corporate actions in Nevada, and these statutes were "patterned after, or are identical to, the provisions of the 1984 Model Business Corporation Act." <u>American Ethanol, Inc. v. Cordillera Fund</u>, 252 P. 3d 663 (Nev. 2011). "Because the Legislature relied upon the Model Act and the Model Act relies heavily on New York and Delaware case law, we look to the Model Act and the law of those states in interpreting the Nevada statutes." <u>Cohen v. Mirage Resorts, Inc.</u>, 62 P.3d 720, 726 n. 10 (Nev. 2003).

[3] Actually, with regard to "(b) certify (when shares purchased)," a failure to make such certification simply allows CEC to treat such shares as after-acquired shares pursuant to NRS 92A.440(2); therefore such certification need not be made at all.

[4] This certainly true for the 350,000 shares, though not necessarily for the 650,000 shares. See Dkt. 233 for relevant timelines.

appraisal remedy" and the dissenter cannot withdraw from the appraisal process unless the procedures required by statute for a formal withdrawal are followed).

Simply stated, the demand letters required were already delivered by Cede & Co., the stockholder of record, before the Sammons demand letters ever arrived – the Sammons demand letters could not have vitiated appraisal rights already asserted by the stockholder of record in legally valid and sufficient Cede & Co. appraisal demand letters.

But even assuming the superfluous demand letters from the Sammonses are somehow relevant, they cannot be deemed legally void simply because they specified payment in Chinese yuan rather than U.S. dollars.

The Nevada Foreign-Money Claims Act, NRS 17.410-660 explicitly allows legal claims and demands to be in foreign currencies.

CEC cites no authority for its argument that the Nevada Foreign-Money Claims Act, NRS 17.410-660, and specifically NRS 17.590, does not apply to claims pursuant to the Dissenters' Rights Statutes, NRS 92A.300-500.

In any event, there could be no policy reason for not applying the Nevada Foreign-Money Claims Act to all claims subject to payment demands or judicial determination, and particularly those claims dealing with foreign companies with all of their revenues, assets, and profits in foreign currencies. This is particularly true when dealing with money demands from a company from a country like China which has a blocked currency [5] and currency controls.

---

[5] A "blocked currency" is one that cannot be freely exchanged for other currencies.

CEC claims that it cannot reliably pay shareholders in US dollars "for at least 15 years" due to "currency controls." See CEC valuation Report by Rand Curtiss[6] attached as an exhibit to "Motion for Partial Summary Judgment on Valuation as of July 3, 2013" on file with this Court (at page G-18), Dkt. 37.

CEC also claims that it cannot legally pay shareholders in Chinese yuan, at least not in the USA. Dkt. 253, pg 13.

Logic compels the conclusion that if CEC cannot pay "fair value" in US dollars, and cannot pay "fair value" in Chinese yuan in the USA, the *only* equitable alternative is payment of "fair value" in Chinese yuan in China. Eventually this Court could well order CEC to "pay 'fair value' in US dollars, if reasonably possible, or in Chinese yuan, in China if necessary."

But even if the Nevada Dissenters' Rights Statutes explicitly stated that payment demands must be in US dollars – it doesn't – and even if the Nevada Foreign-Money Claims Act explicitly stated that it does not apply to Dissenters' Rights cases – it doesn't – the Sammonses would still prevail under principles of substantial compliance. The exchange rate for the Chinese yuan was 6.13 on July 3, 2013 (date of reverse split) and was 6.12 on September 25, 2013 (date of CEC rejection letter), 84 days later.[7] Therefore, CEC cannot possibly show prejudice. It is simply not "prejudice" for CEC to have to divide

---

[6] The CEC valuation Report by Rand Curtiss was submitted to the SEC as part of the reverse split review process, and can also be found on the sec.gov website under China Energy Corp, "Definitive Information Statement."

[7] See ycharts.com/indicators/chinese_yuan_exchange_rate. It is common knowledge that the exchange rate for the Chinese yuan is fixed within a narrow range, resulting in minimal fluctuation.

the Chinese yuan demanded by the exchange rate of 6.13[7] to swiftly arrive at an equivalent U.S. dollar amount. Once payment was refused the Payment Demand was void, and the matter of "fair value" was only subject to judicial appraisal, with "fair value" to be paid in US dollars or Chinese yuan as deemed appropriate by the Court.

In conclusion:

(a) the Cede & Co. demand letters for appraisal were the only "demand letters" required or legally allowed to assert dissenter's rights;
(b) the Sammons payment demand letters were therefore superfluous;
(c) even if the Sammons demand letters were not superfluous, the demands in Chinese yuan are explicitly allowed by the Nevada Foreign Money Claims Act; and
(d) even if the Sammons demand letters were not superfluous, and the demands in Chinese yuan were not explicitly allowed by the Nevada Foreign Money Claims Act, the equivalent value in US dollars was easily calculated by dividing the yuan demanded by the exchange rate of 6.13.


Respectfully submitted,

_/s/ Michael Sammons_
Michael Sammons, pro se

---

[7] CEC argues that, "How could CEC possibly know what the Sammonses wanted for their shares when the currency exchange rate 'changes daily'." But the truth is the exchange rate only changed from 6.13 to 6.12 over the relevant period of 84 days. But how could CEC possibly know how to divide the Chinese yuan demanded by 6.13 (the exchange rate) to arrive at an equivalent US dollar demand? - what super computer on earth could possible handle such a calculation?   Finally CEC's argument that the Sammonses could just as well have demanded payment in baskets of wheat is just as silly - almost. CEC generates all of its revenue in Chinese yuan – not wheat - and all of its bank accounts are in Chinese yuan – not wheat – and all of its profits are in Chinese yuan – not wheat. Wheat – seriously?

Certificate of Service

A true and exact copy was mailed or emailed to all parties this 5th day of Sept, 2014.

_____
Michael Sammons