UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CHINA ENERGY CORPORATION, | Case No. 3:13-cv-00562-MMD-VPC |
| Plaintiff, | |
| v. | ORDER |
| ALAN HILL, et al., | (Defs.' Motion to Dismiss And/Or Strike – dkt. no. 152) |
| Defendants, | |
| ELENA SAMMONS and MICHAEL SAMMONS, | |
| Third-Party Plaintiffs, | |
| v. | |
| CEDE & CO., THE DEPOSITORY TRUST COMPANY, and COR CLEARING | |
| Third-Party Defendants | |

I.    **SUMMARY**

Before the Court is a Motion to Dismiss And/Or Strike (dkt. no. 152) filed by Third-Party Defendants Cede & Co. ("Cede") and The Depository Trust Company ("DTC") (together, "DTC Defendants"). The Court has also reviewed the opposition filed by Third-Party Plaintiffs Elena and Michael Sammons ("the Sammons") (dkt. no. 172) and DTC Defendants' reply (dkt. nos. 171, 200). For the following reasons, the motion is granted.

II.    **BACKGROUND**

In an order issued on June 13, 2014, the Court addressed a similar Motion to Dismiss and/or To Strike filed by Third-Party Defendant COR Clearing, LLC ("COR").

(Dkt. no. 226.) COR's motion focused on Fed. R. Civ. P. 14(a), whereas the present motion takes issue with this Court's jurisdiction and the sufficiency of the Sammons' pleadings, along with Rule 14. (*See* dkt. no. 161.) The order denying COR's motion ("COR Order") erroneously noted that COR was the only Third-Party Defendant to move to dismiss or strike the Sammons' First Amended Third Party Complaint. (Dkt. no. 226 at 2.) On June 18, 2014, the Court granted, in part, the Sammons' Motion to Correct the COR Order, recognizing that DTC and Cede had filed the present motion in February 2014. (Dkt. no. 230.)

This motion arises out of a complaint filed by Plaintiff China Energy Corporation ("CEC") in the First Judicial District Court of the State of Nevada in and for the County of Carson City. (Dkt. no. 128-1 at 1.) CEC seeks a declaration that certain shareholders — including the Sammons — did not properly dissent to a stock split. (*Id.* at 4-7.) CEC alleges that the Sammons "failed to timely deposit [their] stockholder's certificates," (*id.* ¶¶ 33-34), and that their "purported demand was expressed" in the wrong currency. (*Id.* ¶ 35.) Because of these errors, CEC asks the Court to declare that "[n]o defendant is entitled to payment for his or her shares." (*Id.* at 7.) Alternatively, CEC requests a "fair value determination" that before the stock split, CEC's stock was worth $0.14 per share. (*Id.* at 6-7.)

After removing CEC's action, the Sammons filed a Third-Party Complaint against Cede, DTC, and COR (together, "Third-Party Defendants"), pursuant to Rule 14. (Dkt. no. 128.) Proceeding pro se, the Sammons allege that the Third-Party Defendants vitiated their ability to dissent to CEC's stock split. (*Id.* ¶¶ 19, 25, 28, 32-36, 40-41.) The Sammons allege that in so doing, the Third-Party Defendants breached a contract, their fiduciary duties, and were negligent. (*Id.* ¶ 41.) If, as CEC requests, this Court declares that the Sammons failed to dissent to CEC's stock split, the Sammons request a

///

///

///

1    declaratory judgment specifying that, but for the Third-Party Defendants' errors, the

2    Sammons would have properly dissented to CEC's stock split.[1] (*Id.* at 12.)

3        DTC is a securities depository and clearing agency. (*Id.* ¶¶ 5-6; dkt. no. 152-1, Ex.

4    1 ¶ 7.) DTC is incorporated in New York as a limited purpose trust company; its primary

5    place of business is New York City, New York. (Dkt. no. 152-1, Ex. 1 ¶ 7.) Securities

6    deposited with DTC are registered to Cede, DTC's nominee. (*Id.* ¶ 9.) Cede is a

7    partnership under New York law, and its principal place of business is New York City,

8    New York. (*Id.* ¶ 7; dkt. no. 128 ¶ 4.)

9        Before CEC's stock split, the Sammons allege that they asked Cede, the

10   shareholder of record for their CEC shares, to provide a letter consenting to their dissent

11   pursuant to NRS § 92A.400(2). (Dkt. no. 128 ¶¶ 17-18.) DTC allegedly refused to

12   provide this written consent, instead indicating that it would charge $400 to perfect the

13   Sammons' dissenters' rights. (*Id.* ¶¶ 19, 40.) The Sammons contend that Cede mailed a

14   dissenters' rights letter to CEC in Nevada, asserting appraisal rights for Elena Sammons'

15   shares. (*Id.* ¶ 25.) Because the letter misstated the number of shares at issue and Elena

16   Sammons' address, Cede allegedly withdrew the letter and submitted a corrected copy

17   to CEC. (*Id.* ¶¶ 25, 28.) Additionally, the Sammons allege that the Third-Party

18   Defendants caused Quicksilver Stock Transfer, LLC ("Quicksilver"), CEC's Nevada-

19   based stock transfer agent, to print an unnecessary stock certificate for their shares. (*Id.*

20   ¶¶ 23, 31-35; *see* dkt. no. 200 at 42.) The stock certificate was untimely delivered to

21   CEC. (Dkt. no. 128 ¶¶ 34-35.)

22       DTC Defendants argue that the Third-Party Complaint should be dismissed for

23   three reasons. (Dkt. no. 152 at 3.) First, they assert that the Court lacks personal

24   jurisdiction. Second, they contend that the Sammons' impleader was improper under

25   ///

26   _____

27   [1]The Sammons also seek costs and other awards, as appropriate. (Dkt. no. 128

28   at 12.)

1    Rule 14. Third, they argue that the Sammons fail to state essential elements of their

2    claims. The Court finds that the personal jurisdiction argument is dispositive.

3    **III.    LEGAL STANDARD**

4           Courts must liberally construe complaints filed by pro se litigants. *Erickson v.*

5    *Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Like other plaintiffs, pro se third-party

6    plaintiffs bear the burden of establishing the district court's personal jurisdiction. *See*

7    *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Where, as

8    here, the defendant's motion is based on written materials rather than an evidentiary

9    hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to

10   withstand the motion to dismiss." *Brayton Purcell LLP v. Recordon & Recordon*, 606

11   F.3d 1124, 1127 (9th Cir. 2010) (internal quotation marks omitted). The plaintiff cannot

12   "'simply rest on the bare allegations of its complaint,' [but] uncontroverted allegations in

13   the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800 (citation

14   omitted) (*quoting Amba Mktg. Sys.*, *Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir.

15   1977)). The court "may not assume the truth of allegations in a pleading which are

16   contradicted by affidavit," *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280,

17   1284 (9th Cir. 1977), but it may resolve factual disputes in the plaintiff's favor, *Pebble*

18   *Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

19   **IV.    DISCUSSION**

20          A two-part analysis governs whether a court retains personal jurisdiction over a

21   nonresident defendant. "First, the exercise of jurisdiction must satisfy the requirements of

22   the applicable state long-arm statute." *Chan v. Soc'y Expeditions*, 39 F.3d 1398, 1404

23   (9th Cir. 1994). Because "Nevada's long-arm statute, NRS § 14.065, reaches the limits

24   of due process set by the United States Constitution," the Court moves to the second

25   part of the analysis. *Baker v. Eighth Judicial Dist. Court ex rel. Cnty. of Clark*, 999 P.2d

26   1020, 1023 (Nev. 2000). "Second, the exercise of jurisdiction must comport with federal

27   due process." *Chan*, 39 F.3d at 1404-05. "Due process requires that nonresident

28   defendants have certain minimum contacts with the forum state so that the exercise of

4

jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* at 1405 (*citing Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). Courts analyze this constitutional question with reference to two forms of jurisdiction: general and specific jurisdiction. The Sammons contend that only specific jurisdiction covers DTC Defendants. (*See* dkt. no. 172 at 5.)

Specific jurisdiction exists where "[a] nonresident defendant's discrete, isolated contacts with the forum support jurisdiction on a cause of action arising directly out of its forum contacts." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075 (9th Cir. 2011). Courts use a three-prong test to determine whether specific jurisdiction exists over a particular cause of action:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Id.* at 1076 (*quoting Schwarzenegger*, 374 F.3d at 802)). The party asserting jurisdiction bears the burden of satisfying the first two prongs. *Id.* If it does so, the burden shifts to the party challenging jurisdiction to set forth a "'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

The Court concludes that the Sammons cannot demonstrate the first prong required to establish specific jurisdiction. The Court therefore will not address the remaining two prongs.

"The first prong of the specific jurisdiction test refers to both purposeful availment and purposeful direction." *Id.* In contract cases, a court asks whether a defendant "purposefully avails itself of the privilege of conducting activities or consummates a transaction in the forum." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (*quoting Schwarzenegger*, 374 F.3d at

802) (internal quotation marks and alterations omitted). In tort cases, the court asks whether a defendant "purposefully directs" its activities at the forum state and applies an "effects" test that looks to where the defendant's actions were felt, rather than where they occurred. *Id.* (*quoting Schwarzenegger*, 374 F.3d at 803).

Here, the Sammons seek a declaratory judgment that DTC Defendants failed to follow Nevada's dissenters' rights laws, NRS § 92A.440, by sending defective and untimely documents to CEC. The Sammons assert that DTC Defendants were negligent, breached a contract, and breached their fiduciary duties in failing to comply with NRS § 92A.440. (Dkt. no. 128 ¶ 41.) Because the Sammons allege both contract and tort claims, the Court examines DTC Defendants' alleged contacts with Nevada under both the purposeful availment and purposeful direction frameworks. *See Yahoo! Inc.*, 433 F.3d at 1206 (discussing tests in the context of a First Amendment claim).

### A.   Purposeful Availment

Purposeful availment occurs when a defendant "deliberately has engaged in significant activities within a state, or has created continuing obligations between himself and residents of the forum." *Burger King Corp.*, 471 U.S. at 475-76 (citations and internal quotation marks omitted). A single act associated with a forum state may be sufficient, "[s]o long as it creates a 'substantial connection' with the forum." *Id.* at 475 n.18 (internal quotation marks omitted). Activities constituting purposeful availment may include "executing or performing a contract" in a forum state. *Schwarzenegger*, 374 F.3d at 802. In holding that personal jurisdiction existed over a franchisee in the franchisor's home state, the Court in *Burger King* examined the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King Corp.*, 471 U.S. at 479. Here, even when liberally construed, neither the Third-Party Complaint nor the Sammons' opposition shows that DTC Defendants "purposefully avail[ed] [themselves] of the privilege of conducting activities within [Nevada]." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

///

The Sammons allege that DTC Defendants were contractually bound to carry out certain activities in Nevada. (Dkt. no. 172 at 9.) The contract at issue allegedly arose from a $400 payment DTC charged to process the Sammons' dissent letter. (*See id.*, Exh. B.) The Sammons assert that they were either parties to the contract, or were third party beneficiaries. (*Id.*, Exh. A ¶ 6; dkt. no. 128 ¶ 40.) By charging the fee, the Sammons contend that DTC Defendants agreed to perfect their rights as dissenters, a process defined by NRS § 92A.440 as the (1) timely delivery of a dissenters' rights letter, and (2) the timely delivery of stock certificates. (Dkt. no. 172 at 9); *see* NRS § 92A.440(1). Thus, the Sammons argue, because DTC Defendants executed a contract that required performance in Nevada, they purposefully availed themselves of the forum.

Assuming the $400 fee created a contractual obligation to perfect the Sammons' dissenters' rights,[2] the Sammons have not demonstrated that their contract with DTC Defendants had a "*substantial* connection with [Nevada]." *Burger King Corp.*, 471 U.S. at 479 (*quoting McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). First, the alleged contractual obligations do not involve any residents of the forum state. The Sammons are residents of Texas, not Nevada (dkt. no. 128 ¶¶ 2, 9), and DTC Defendants' principal place of business is New York. (Dkt. no. 128 ¶¶ 4, 6; dkt. no. 152-1, Exh. 1 ¶¶ 7, 9.) Second, in terms of the activities involved, no negotiations occurred in or revolved around Nevada, and no written agreement suggests that the parties contemplated any consequences that might occur in Nevada. The Sammons Affidavit notes, however, that the Sammons paid the $400 fee to perfect their rights under Nevada law, indicating that Nevada appeared in the parties' course of dealing. (Dkt. no. 172, Exh. A ¶ 5.) But it is not clear what effect, if any, Nevada had on the course of dealing. Presumably, the parties would have reached the same agreement — where, for a $400 fee, DTC

---

[2]DTC Defendants stress that the Sammons improperly alleged these contractual obligations for the first time in their opposition to the present motion. (*See* dkt. no. 200 at 7.) Liberally construed, the Third-Party Complaint alleges a contract through which the DTC Defendants agreed to perfect their dissenters' rights. (Dkt. no. 128 ¶ 40.) The Court therefore assumes that the contract exists for this analysis.

1    Defendants would assume responsibility for perfecting the Sammons' dissenters' rights

2    — if CEC were domiciled in a different state.

3           Furthermore, in performing their contractual obligation, DTC Defendants had only

4    five points of contact with Nevada. (*See* dkt. no. 128 ¶¶ 23, 25, 28, 31-35.) As described

5    by the Sammons, these contacts are: (1) a package Quicksilver mailed to Cede, which

6    contained a transmittal letter for consenting shareholders, a dissenters' rights notice, and

7    a form demand letter; (2) a dissenters' rights letter on behalf of Elena Sammons; (3) a

8    withdrawal of that dissenters' rights letter; (4) an amended dissenters' rights letter; and

9    (5) correspondence to order a stock certificate.[3] (*Id.*) These few contacts are attenuated

10   — rather than suggesting a substantial connection to Nevada, they reflect a single

11   transaction carried out for remote shareholders. *See Burger King Corp.*, 471 U.S. at 466-

12   68 (finding purposeful availment through extensive communications with the forum state,

13   including months-long negotiations); *Gray & Co. v. Firstenberg Mach. Co., Inc.*, 913 F.2d

14   758, 760-61 (9th Cir. 1990) (finding no purposeful availment where contacts with forum

15   state consisted of phone calls and an oral purchase agreement). Moreover, no evidence

16   indicates that DTC Defendants' business benefitted from contact with Nevada. Instead,

17   the exhibits show that DTC Defendants would recoup the same fee regardless of where

18   they agreed to send dissenters' materials. (Dkt. no. 172, Exh. B); *see Decker Coal Co. v.*

19   *Commonwealth Edison Co.*, 805 F.2d 834, 840 (nonresident company purposefully

20   _____

21          [3]A declaration submitted with DTC Defendants' motion ("Rex Declaration")
     contradicts the allegation that DTC Defendants sent dissenters' rights letters to Nevada.
22   (Dkt. no. 200, Decl. of Colette Rex.) The Rex Declaration indicates that COR — not DTC
     or Cede — mailed two dissenters' rights letters and a withdrawal letter to CEC in
23   Nevada. (*Id.* ¶¶ 9, 13.) The Rex Declaration includes shipping labels for each letter. (*Id.*,
     Exhs. D, G.) The Sammons, however, included with their opposition an affidavit from
24   Michael Sammons ("Sammons Affidavit") pursuant to Rule 56(d). (Dkt. no. 172, Exh. A.)
     The Sammons Affidavit states that Cede delivered two dissenters' rights letters to CEC
25   in Nevada. (*Id.* ¶¶ 7-8.) Because the Court may consider affidavits in deciding a Rule
     12(b)(2) motion, *see Data Disc, Inc.*, 557 F.2d at 1284-85, and because the Court must
26   liberally construe pro se filings, the Court construes the Sammons Affidavit as supporting
     the Sammons' opposition to the Rule 12(b)(2) motion to dismiss. So construed, the
27   Sammons Affidavit contradicts the Rex Declaration. Because the Court resolves factual
     disputes in the plaintiff's favor, the Court assumes that DTC Defendants engaged in
28   correspondence with CEC in Nevada. *See Pebble Beach Co.*, 453 F.3d at 1154.

availed itself of the state where a contract was performed because it benefitted from coal deliveries there). Accordingly, the Sammons have not made a prima facie showing of purposeful availment.

### B.    Purposeful Direction

The Court considers the Sammons' negligence and breach of fiduciary duties claims through a purposeful direction analysis. To determine whether DTC purposefully directed its actions to Nevada, the Court employs the "effects" test, which requires that "the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc.*, 433 F.3d at 1206 (alteration in original) (*quoting Schwarzenegger*, 374 F.3d at 803) (internal quotation marks omitted).

Although the Sammons satisfy the first two elements of the "effects" test, they have not alleged any harm occurring in the forum state. *See id.* at 1207 (clarifying that the test may be satisfied so long as a "jurisdictionally sufficient amount of harm is suffered in the forum state"). First, by alleging that DTC Defendants prepared and sent dissenters' rights materials to CEC in Nevada, the Sammons describe an intentional act. *See Schwarzenegger*, 374 F.3d at 806 (defining an intentional act as an "external manifestation of [an] actor's will" and "an intent to perform an actual, physical act in the real world"). Second, these acts were expressly aimed at Nevada, where CEC's activity regarding the stock split occurred. Third, however, the harm arising from these acts — the Sammons' failure to perfect their dissenters' rights — occurred in Texas, not Nevada. *See Yahoo!*, 433 F.3d at 1210-11. Indeed, the Sammons have not alleged that CEC or any other Nevada-based entity was harmed by their failure to perfect their dissenters' rights. Because they accordingly cannot satisfy the "effects" test, the Sammons have not made a prima facie showing of purposeful direction.

### V.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and

1  determines that they do not warrant discussion or reconsideration as they do not affect

2  the outcome of the Motion.

3       It is ordered that DTC Defendants' Motion to Dismiss And/Or Strike (dkt. no. 152)

4  is granted.

5       ENTERED THIS 15th day of September 2014.

6

7  _____

8  MIRANDA M. DU
   UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28