1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CHINA ENERGY CORPORATION, | Case No. 3:13-cv-00562-MMD-VPC |
| Plaintiff, | ORDER |
| v. | (Pl.'s Motion for Partial Summary Judgment – dkt. no. 71) |
| ALAN T. HILL, et al., | |
| Defendants, | (Defs.' Amended Motion for Partial Summary Judgment – dkt. no. 73) |
| ELENA SAMMONS and MICHAEL SAMMONS, | (Defs.' Motion for Partial Summary Judgment – dkt. no. 92) |
| Third-Party Plaintiffs, | |
| v. | |
| COR CLEARING, | |
| Third-Party Defendant. | |

9

10

11

12

13

14

15

16

17

18

19    **I.    SUMMARY**

20    Before the Court are three motions for partial summary judgment: (1) Plaintiff

21    China Energy Corporation's ("CEC") Motion for Partial Summary Judgment on Count I of

22    the Complaint as to the Sammons Defendants ("CEC's Motion") (dkt. no. 71);

23    (2) Defendants Michael and Elena Sammons' ("the Sammons") Amended Motion for

24    Partial Summary Judgment re Right to Appraisal of 350,000 Shares of CEC ("Appraisal

25    Motion") (dkt. no. 73); and (3) the Sammons' Motion for Partial Summary Judgment

26    Regarding Substantial Compliance and Prejudice ("Substantial Compliance Motion")

27    (dkt. no. 92). The Court has reviewed the oppositions and replies to each motion (dkt.

28    nos. 94, 95, 97, 105, 107, 110, 130, 233, 243, 251, 253, 254).

1      For the reasons discussed below, CEC's Motion (dkt. no. 71) is denied, and the

2   Sammons' Appraisal Motion (dkt. no. 73) and Substantial Compliance Motion (dkt. no.

3   92) are denied as moot.

4   **II.      BACKGROUND**

5      After carrying out a reverse stock split, CEC initiated this action on September 27,

6   2013, in the First Judicial District Court for the State of Nevada in and for the County of

7   Carson City. (Dkt. no. 71-1 at 1.) CEC seeks a declaratory judgment that certain

8   stockholders — including the Sammons — failed to perfect their rights to dissent to the

9   stock split. (*Id.* at 4-6.) As the basis for declarative relief, CEC alleges that the Sammons

10  untimely submitted their stockholder's certificates and inappropriately demanded

11  payment in Chinese Yuan. (*Id.* ¶¶ 33-35.) Alternatively, CEC seeks a fair value

12  determination that its stock was worth $0.14 per share prior to the stock split. (*Id.* ¶ 49.)

13     CEC moves for summary judgment on its declarative relief claim with regard to

14  the Sammons. (Dkt. no. 71.) Proceeding *pro se*, the Sammons seek summary judgment

15  on the same claim, contending that they either perfected their dissenter's rights for

16  350,000 CEC shares they beneficially owned (dkt. no. 73), or that they substantially

17  complied with Nevada law in attempting to perfect those shares (dkt. no. 92). Unless

18  noted, the following facts are undisputed.

19     CEC is a Nevada corporation that operates as a holding company to facilitate coal

20  production, processing, and trade in the People's Republic of China. (Dkt. no. 71-1 ¶ 1;

21  dkt. no. 71-2 ¶¶ 5-6.) On July 3, 2013, CEC filed a Certificate of Amendment to its

22  Articles of Incorporation with the Nevada Secretary of State to carry out a 12,000,000 to

23  1 reverse stock split. (Dkt. no. 71-3 ¶ 2; *id.*, Ex. A.) At the time of the stock split, the

24  Sammons were the joint beneficial owners of 350,000 shares of CEC ("Jointly Held

25  Shares"), and Elena Sammons was the beneficial owner of 650,000 shares held in a

26  rollover IRA through Delaware Charter Guarantee & Trust ("Elena Sammons' Shares").

27  (Dkt. no. 71-1 ¶¶ 3-4; dkt. no. 7 ¶¶ 1-2; dkt. no. 8 ¶¶ 1-2.) Cede & Co. ("Cede") was the

28  ///

1    owner of record for the Sammons' shares.[1] (Dkt. no. 71-1 ¶ 16; dkt. no. 7 ¶ 3; dkt. no. 8

2    ¶ 3.) Cede is the nominee for The Depository Trust Company ("DTC"), a securities

3    depository and clearing corporation. (Dkt. no. 152-1, Ex. 1 ¶ 9.)

4         CEC alleges that on July 11, 2013, CEC's stock transfer agent, Quicksilver Stock

5    Transfer ("Quicksilver"), mailed a package regarding the stock split to Cede. (Dkt. no.

6    71-5 ¶ 4; dkt. no. 233-1 at 1; dkt. no. 233-2 at 1.) The package included a Transmittal

7    Letter from CEC, a Dissenters' Rights Notice, a form Demand Letter, and a copy of

8    Chapter 92A of the Nevada Revised Statutes, NRS §§ 92A.005-92A.500. (Dkt. no. 71-5,

9    Exh. A.) The Dissenters' Rights Notice was undated, but it instructed recipients to take

10   the following three actions "within 30 days of the date that [the] Notice is delivered" to

11   exercise their rights as dissenters: "(i) deliver the completed Demand Letter; (ii) certify

12   whether [they] acquired beneficial ownership of the shares before the date set forth in

13   the Demand Letter; and (iii) deliver the certificates representing the dissenting shares to

14   the Company." (*Id.* at 11.) The Notice does not specify a date by which these actions

15   must occur. (*Id.*)

16        The parties dispute the date on which Cede, the stockholder of record for the

17   Sammons' shares, received the Dissenters' Rights Notice. (*See* dkt. no. 251 at 3-4.) The

18   Sammons suggest an "unconfirmed" receipt date of July 16, 2013. (Dkt. no. 233-1 at 1;

19   dkt. no. 233-2 at 1.) Third-Party Defendant COR Clearing, LLC ("COR") argues that

20   Cede never received the document by mail. (Dkt. no. 251 at 3-4.) Rather, COR contends

21   that Cede, through DTC, was given a courtesy copy of the Dissenters' Rights Notice on

22   July 22, 2013, or July 23, 2013.[2] (*Id.* at 4 & n.2.)

23
_____

24        [1]As the stockholder of record, Cede held the Sammons' shares in "street name,"
     meaning "a brockerage firm's name in which securities owned by another are
     registered." *Smith v. Kisorin USA, Inc.*, 254 P.3d 636, 638 n.1 (Nev. 2011) (quoting
25   *Black's Law Dictionary* 1557 (9th ed. 2009)). Here, as beneficial owners of CEC stock,
     the Sammons "hold[] equitable title to the stock that is registered under [Cede] in street
26   name." *Id.*

27        [2]The document cited for this proposition is an email from William Schaben, an
     assistant manager for TD Ameritrade, to Michael Sammons. (Dkt. no. 71-4, Exh. B at 10,
28   16.) Although "only admissible evidence may be considered by the trial court in ruling on
     *(fn. cont…)*

1    In response to the Dissenters' Rights Notice, the Sammons — alone and through

2    their intermediaries, including Cede, DTC, and COR — transmitted three sets of

3    documents for their Jointly Held Shares and for Elena Sammons' Shares to CEC. The

4    first documents are dissenter's rights letters prepared and submitted on the Sammons'

5    behalf ("Dissenter's Rights Letter"). On either July 30, 2013, or July 31, 2013, CEC's

6    statutory agent, United Corporate Services, Inc. ("UCS") received a Dissenter's Rights

7    Letter from Cede with respect to the Sammons' Jointly Held Shares. (Dkt. no. 71-3 ¶ 3;

8    *id.*, Exh. B; dkt. no. 233-1 at 1.) UCS received a Dissenter's Rights Letter from COR

9    regarding Elena Sammons' Shares on either August 1, 2013, or August 14, 2013. (*See*

10   dkt. no. 71-3 ¶ 4 (stating August 1); dkt. no. 130-2 ¶¶ 10-11 (stating August 14); dkt. no.

11   251-1 ¶ 15 (noting that COR submitted the Dissenter's Rights Letter to CEC and

12   Quicksilver on August 1, 2013, and on August 13, 2013); dkt. no. 233-2 at 1.) On August

13   13, 2013, COR withdrew this Dissenter's Rights Letter after realizing it had two

14   typographical errors; COR resubmitted a revised Dissenter's Rights Letter to Quicksilver

15   the same day. (Dkt. no. 200, Rex Decl. ¶¶ 10-13; *id.*, Ex. E.) Several days earlier, Elena

16   Sammons sent a letter noting these errors to UCS. (Dkt. no. 130-2, ¶¶ 6-7; *id.*, Ex. C.)

17   Second, the Sammons submitted letters demanding payment for their shares and

18   asserting when they acquired beneficial ownership of their shares ("Demand Letter").

19   With regard to the Jointly Held Shares, UCS received a Demand Letter from the

20   Sammons on July 31, 2013. (Dkt. no. 71-3 ¶ 3; *id.*, Exh. B at 6-7; dkt. no. 233-1 at 1.) On

21   August 7, 2013, UCS received a similar Demand Letter for Elena Sammons' Shares.

22   (Dkt. no. 130-2 ¶¶ 6-7; *id.*, Exh. B; dkt. no. 233-2 at 1.)

23   ///

24

25   (…fn. cont.)
a motion for summary judgment," *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179,
1181 (9th Cir. 1988), the Court "focus[es] on the admissibility of [evidence's] contents,"
26   rather than its form. *Fraser v. Goodale*, 342 F.3d 1032, 1037-38 (9th Cir. 2003).
Although the email's form may be improper under Fed. R. Evid. 802, its contents could
27   be rendered admissible. *See Fraser*, 342 F.3d at 1037-38. In light of the liberal
construction this Court must give to *pro se* litigants' filings, the Court includes this
28   proposition in this factual background.

1       Third, the Sammons submitted stock certificates for their Jointly Held Shares and

2  for Elena Sammons' Shares. After receiving a request from DTC, Quicksilver printed and

3  mailed a certificate for the Jointly Held Shares to DTC on July 31, 2013. (Dkt. no. 130-1

4  ¶¶ 3-4; *id.*, Exhs. A-1, A-2; dkt. no. 233-1 at 1.) UCS received this certificate on August

5  14, 2013. (Dkt. no. 130-2 ¶¶ 10-11; *id.*, Exh. D at 20-21; dkt. no. 233-1 at 1.) For Elena

6  Sammons' Shares, Quicksilver printed and mailed a certificate to DTC on August 8,

7  2014, after receiving DTC's request for the certificates the same day. (Dkt. no. 130-1 ¶¶

8  5-6; *id.*, Exhs. B-1, B-2; dkt. no. 233-2 at 1.) The Sammons allege that Quicksilver

9  received the certificate on or around August 26, 2013. (Dkt. no. 233-2, Exh. B.)

10  **III.    LEGAL STANDARD**

11       "The purpose of summary judgment is to avoid unnecessary trials when there is

12  no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*,

13  18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the

14  pleadings, the discovery and disclosure materials on file, and any affidavits "show[] that

15  there is no genuine dispute as to any material fact and the movant is entitled to judgment

16  as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

17  (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a

18  reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it

19  could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby,*

20  *Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material

21  facts at issue, however, summary judgment is not appropriate. *Id.* at 250-51. "The

22  amount of evidence necessary to raise a genuine issue of material fact is enough 'to

23  require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin*

24  *Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz.*

25  *v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment

26  motion, a court views all facts and draws all inferences in the light most favorable to the

27  nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103

28  ///

1    (9th Cir. 1986). Courts must also liberally construe documents filed by *pro se* litigants.

2    *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

3    　　　The moving party bears the burden of showing that there are no genuine issues

4    of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In

5    order to carry its burden of production, the moving party must either produce evidence

6    negating an essential element of the nonmoving party's claim or defense or show that

7    the nonmoving party does not have enough evidence of an essential element to carry its

8    ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210

9    F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements,

10   the burden shifts to the party resisting the motion to "set forth specific facts showing that

11   there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may

12   not rely on denials in the pleadings but must produce specific evidence, through

13   affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME*

14   *Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "'must do more than simply show

15   that there is some metaphysical doubt as to the material facts.'" *Orr v. Bank of Am.*, 285

16   F.3d 764, 783 (9th Cir. 2002) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

17   475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of

18   the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

19   **IV.    DISCUSSION**

20   　　　The pending motions turn on the parties' compliance with two provisions of

21   Nevada corporate law. First, CEC issued its Dissenters' Rights Notice pursuant to NRS

22   § 92A.430, which dictates that after a corporation takes certain actions, it must notify its

23   stockholders of their rights to dissent to those actions, and specify details regarding the

24   dissent process. Section 92A.430 specifies that "no later than 10 days after the effective

25   date of the corporate action" giving rise to dissenter's rights, the corporation must send a

26   "dissenter's notice." NRS § 92A.430(2). Corporations "need only . . . directly provide[]

27   [these notices] to the holder of record, who holds the stock in trust for or as an agent of

28   the beneficial stockholder." *Smith v. Kisorin USA, Inc.*, 254 P.3d 636, 640 (Nev. 2011).

1        Second, NRS § 92A.440 requires stockholders who receive a dissenter's notice

2   under NRS § 92A.430 to take three steps to exercise their dissenter's rights. As CEC's

3   Dissenters' Rights Notice described (*see supra* Part II), NRS § 92A.440 requires

4   dissenting stockholders to "(a) [d]emand payment; (b) [c]ertify whether the stockholder or

5   beneficial owner . . . acquired beneficial ownership of the shares before [a date specified

6   in the dissenter's rights notice]; and (c) [d]eposit the stockholder's certificates, if any, in

7   accordance with the terms of the notice." NRS § 92A.440(1)(a)-(c).

8        **A.    CEC's Motion**

9        CEC contends that the undisputed facts demonstrate that the Sammons failed to

10  comply with NRS § 92A.440 because they submitted an untimely dissent, and because

11  they improperly demanded payment in a foreign currency. (Dkt. no. 71 at 4-5, 4 n.6.)

12  CEC's Dissenters' Rights Notice, however, failed to comply with NRS § 92A.430

13  because it did not set a date for stockholders' responses. The Court therefore finds that

14  CEC cannot show that, as a matter of law, it is entitled to judgment on its claim that the

15  Sammons failed to timely assert their dissenter's rights for their Jointly Held Shares and

16  for Elena Sammons' Shares. Nor has CEC shown that it is entitled to judgment as a

17  matter of law that the Sammons failed to dissent because they used a foreign currency

18  in their demand letters. Summary judgment is therefore inappropriate.

19       **1.    Timeliness**

20       Whether CEC's Dissenters' Rights Notice complied with NRS § 92A.430 is a

21  question of statutory interpretation. A statutory construction analysis begins and ends

22  with unambiguous statutory text. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438

23  (1999); *see Wingco v. Gov't Emps. Ins. Co.*, 321 P.3d 855, 856 (Nev. 2014) ("Unless

24  ambiguous, the statutory text controls."). Courts must "'give words their plain meaning

25  unless attributing the plain meaning would violate the spirit of the statute.'" *Torres v.*

26  *Goodyear Tire & Rubber Co.*, 317 P.3d 828, 830 (Nev. 2014) (*quoting Banks ex rel.*

27  *Banks v. Sunrise Hosp.*, 102 P.3d 52, 68 (Nev. 2004)). In so doing, courts "avoid

28  statutory interpretation that renders language meaningless or superfluous." *Hobbs v.*

1    *State*, 251 P.3d 177, 179 (Nev. 2011). But "[w]here a statute is capable of being

2    understood in two or more senses by reasonably informed persons, the statute is

3    ambiguous." *McKay v. Bd. of Supervisors of Carson City*, 730 P.2d 438 (Nev. 1986).

4         Nevada's dissenter's rights laws are designed with the dual purpose of

5    "facilitat[ing] business mergers" and "protecting minority shareholders from being unfairly

6    impacted by the majority shareholders' decision to approve [certain corporate actions],"

7    *Cohen v. Mirage Resorts, Inc.*, 62 P.3d 720, 726-27 (Nev. 2003). Within this framework,

8    NRS § 92.430 requires corporations to send stockholders a notice that, among other

9    notifications, "[sets] a date by which the subject corporation must receive [a dissenting

10   stockholder's] demand for payment, which may not be less than 30 nor more than 60

11   days after the date the notice is delivered." NRS § 92A.430(2)(d). The notice must also

12   state that if a corporation has not received a stockholder's demand for payment "by such

13   specified date," the stockholder "shall be deemed to have waived the right to demand

14   payment." NRS § 92A.430(2)(d).

15        CEC argues that its Dissenters' Rights Notice "set a date" by stating that

16   stockholders "must take [three] actions within 30 days of the date that this Notice is

17   delivered," and that stockholders "shall be deemed to have waived the right to demand

18   payment . . . unless the Demand Letter is received by [CEC] within 30 days of the date

19   that this Notice is delivered." (Dkt. no. 71-5, Exh. A at 11.) CEC contends that delivery is

20   defined by NRS § 75.150(7), which makes effective "any notice or other communication"

21   when it is "deposit[ed] in the United States mail" so long as the communication is "in a

22   comprehensible form or manner" and is "prepaid and correctly addressed to a

23   stockholder."[3] NRS § 75.150(7)(b). Thus, if CEC mailed a comprehensible, prepaid, and

24   correctly addressed Dissenters' Rights Notice on July 11, 2013, CEC argues that the

25   Sammons were required to ensure CEC's receipt of their dissenting materials by either

26   ///

27        [3]NRS § 75.020 defines "deliver" as "any method of delivery used in conventional
28   commercial practice."

8

1  Saturday, August 10, 2013, or Monday, August 12, 2013. (Dkt. no. 71-1 ¶¶ 32, 34; dkt.

2  no. 253 at 9.) CEC misconstrues the statute's requirements.

3  The plain language of NRS § 92A.430 indicates that a corporation must "set a

4  date" by which stockholder demand letters must be received. NRS § 92A.430(2)(d). This

5  "specified date" must fall within a period of 30 to 60 days after a notice is delivered. *Id.*

6  Thus, the plain meaning of the statute requires a "date" to be set, not a timeframe,

7  although the "date" must fall within the specified 30 to 60 day timeframe.[4] Even in the

8  absence of a definition of "date," *see* NRS §§ 92A.005 to 92A.500, the statute

9  unambiguously distinguishes between a date that a corporation must specify and the

10  timeframe for that date. CEC, however, asks the Court to read the phrases "set a date"

11  and "specified date" out of the statute. Specifically, CEC's Dissenter's Rights Notice

12  attempts to "set a date" by reciting the statutory language defining the timeframe for that

13  date: CEC's stockholders must comply "within 30 days after the date the notice is

14  delivered." (Dkt. no. 71-5, Exh. A at 11.) The Dissenter's Rights Notice does not identify

15  the "date" of delivery to facilitate a clear calculation of the 30-day deadline.[5]

16  Furthermore, CEC's own uncertainty regarding the response date reflects its

17  failure to comply with the plain language of NRS § 92A.430. CEC's complaint offers two

18  alternative deadlines for dissents: either Saturday, August 10, 2013, or Monday, August

19  12, 2013.[6] (Dkt. no. 71-1 ¶¶ 32, 34.) In the present motion, however, CEC argues that

20  "the very last possible day for a stockholder to exercise dissenter's rights was August 10,

21  2013." (Dkt. no. 71 at 11.) CEC has also argued that the three-day rule defined Fed. R.

22  Civ. P. 6(d) is inapplicable to its timeframe. (*See id.* at 10 n.17.) Given these conflicting

23  [4]"Date" is defined, in part, as "[t]he day when an event happened or will happen." *Black's Law Dictionary* (9th ed. 2009).

24  

25  [5]For example, CEC could have "set a date" by stating that dissent materials "must be received not less than 30 days after September 29, 2014, which is the date the notice is delivered," and clarifying whether dissenters will receive any additional response time

26  if that date falls on a weekend.

27  [6]The parties appear to derive this latter date from Nevada's Rules of Civil Procedure 6, which dictates that time periods ending on a Saturday or Sunday are extended to the end of the next weekday. NCRP 6(a).

28

1  arguments, it is not clear to the Court on what date CEC envisioned its 30-day period

2  would end. Accordingly, CEC has not shown that its Dissenters' Rights Notice "set a

3  date" and stated that "specified date," as required by NRS § 92A.430.

4      CEC stresses that because the Nevada Supreme Court approved a dissenter's

5  notice with a similar timeframe in *Kisorin USA, Inc.*, 254 P.3d at 641, Defendants'

6  arguments must fail. The Court disagrees. In *Kisorin USA, Inc.*, plaintiff stockholders

7  sought to be excused from their untimely dissent, arguing that they never received the

8  dissenter's notice that NRS § 92A.430 requires. *Id.* at 638-40. The plaintiffs were

9  beneficial stockholders, and their stockholder of record had received a dissenter's notice

10  from the defendant corporation. *Id.* at 638. In holding that NRS § 92A.430 requires

11  corporations to send dissenter's notices only to stockholders of record, the court

12  examined the practicality of requiring corporations to notify all stockholders — both

13  beneficial and of record — of their right to dissent. *Id.* at 640-41. The court noted that

14  corporations have no means of obtaining, "as a matter of right," contact information for

15  certain beneficial stockholders. *Id.* at 640. As a result, the court concluded that

16  corporations could only comply with NRS § 92A.430 if the dissenter's notice requirement

17  applied to stockholders of record, not beneficial stockholders. *Id.* at 640-41.

18      The court in *Kisorin USA, Inc.* did not, however, consider whether NRS § 92A.430

19  required corporations to specify a date, rather than a timeframe, by which dissenters

20  must submit their payment demands. The court paraphrased the dissenter's notice at

21  issue as instructing dissenters to "make a written demand for a 'fair value' appraisal to

22  [the corporation] within 45 days after the date of mailing of the dissenter's notice." *Id.* at

23  638. Additionally, the court noted that the district court had "found that the dissenter's

24  notice complied in all respects with Nevada law." *Id.* at 639. The court never specified

25  how the dissenter's notice described the 45-day period, nor did the court discuss this

26  provision outside of its factual and procedural background. *See id.* at 638-41. In

27  analyzing the only issue on appeal — whether beneficial stockholders must receive

28  dissenter's notices — the court implicitly assumed that the plaintiffs' attempt to dissent

1  was untimely, and that the deadline set forth in the dissenter's notice was proper.[7] *See*

2  *id.* at 639. Although the court refused to excuse the plaintiffs' untimely dissent, its

3  analysis focused on which stockholders must receive notice, not whether that notice

4  must specify a date by which stockholders must dissent.

5        Contrary to CEC's arguments, the *Kisorin USA, Inc.* decision did not dispose of

6  this issue. Moreover, in contrast to the *Kisorin* court's concern about the onus that

7  sending notices to all beneficial stockholders would place on corporations, requiring

8  corporations to "set a date" in dissenter's rights notices is a minimal burden. *See id.* at

9  640. Whereas corporations do not have a means of obtaining contact information for all

10  beneficial stockholders, *see id.*, corporations do control the response date for dissents,

11  within a statutorily defined timeframe. *See* NRS § 92A.430(2)(d). Thus, setting a

12  response date carries out the purpose of Nevada's dissenter's rights laws — to protect

13  minority stockholders while facilitating corporate mergers. *See Cohen*, 62 P.2d at 726-

14  27. CEC could have easily "set a date" by stating the actual response due date or stating

15  the "date" that triggers the 30-day response period (i.e., the date of delivery).

16  Accordingly, CEC has not met its initial burden of showing that, as a matter of law, it is

17  entitled to judgment on its claim that the Sammons did not timely dissent to its reverse

18  stock split.

19              **2.      Foreign Currency**

20        CEC's second basis for declarative relief regarding the Sammons is that their

21  payment demand letters were defective because they asserted their demand in Chinese

22  Yuan. (Dkt. no. 71-1 ¶ 35.) It is undisputed that the Sammons' demand letters listed their

23  fair value demand in Chinese Yuan. (*See* dkt. no. 130-2, Exhs. A, B.) But beyond citing

24  to logic to support this argument, CEC fails to pinpoint any controlling authority requiring

25  the Sammons to assert their demand in U.S. dollars. (*See* dkt. no. 253 at 12-13.)

26

27        [7]In a footnote, the court also clarified that the plaintiff stockholders failed to submit
stock certificates along with their payment demand, which rendered their dissent

28  incomplete. *Kisorin USA, Inc.*, 254 P.3d at 640 n.3.

1    Moreover, the fact that the Sammons listed the fair value in Chinese Yuan is neither

2    unreasonable nor surprising given that CEC's business involves transactions in the

3    People's Republic of China. Like its timeliness claim, CEC has not met its initial burden

4    to show that, as a matter of law, the Sammons failed to dissent to the stock split because

5    they used Chinese Yuan in their demand letters. Thus, summary judgment should not be

6    granted.

7    **B.     The Sammons' Appraisal Motion and Substantial Compliance Motion**

8    In the Appraisal Motion, the Sammons argue that CEC's failure to set a date in its

9    Dissenters' Rights Notice could give rise to a number of dissent deadlines. (*See* dkt. no.

10   73 at 6-7 (suggesting a deadline of August 14, 2014); dkt. no. 95 at 3, 17 (listing 18

11   possible deadlines).) The Sammons additionally argue that their use of Chinese Yuan

12   should not affect their dissent to CEC's stock split. (Dkt. no. 73 at 7-9.) Although the

13   Sammons spell out why CEC's Dissenters' Rights Notice was deficient, their arguments

14   assume that CEC's 30-day dissent period would still operate, even if the Court finds —

15   as it does here — that CEC's Dissenters' Rights Notice failed to comply with NRS

16   § 92A.430. (*See* dkt. no. 95 at 9-17.) The Appraisal Motion does not clarify whether the

17   30-day period would still control given the Court's finding that the Dissenters' Rights

18   Notice was defective; nor does CEC's opposition. The Court finds that its holding on

19   CEC's Motion renders moot the Appraisal Motion, which assumes that a 30-day period

20   would control the timeliness of the Sammons' dissent, and that the Sammons' use of

21   Chinese Yuan in their Demand Letters would affect their dissent.

22   The Sammons' Substantial Compliance Motion makes similar arguments

23   regarding the timeliness of their dissent and their use of Chinese Yuan.[8] (Dkt. no. 92 at

24   5.) The Sammons contend that in delivering the stock certificate for their Jointly Held

25   Shares on August 14, 2013, and in demanding payment in a foreign currency, they

26   substantially complied with the requirements in NRS § 92A.440. Because the Motion

27   _____

     [8]Indeed, it is unclear why the Sammons filed a separate motion to raise similar
28   arguments.

1  rests on a response deadline of August 12, 2013, and on the validity of citing a foreign

2  currency in their Demand Letters, the Court finds that its ruling on CEC's Motion renders

3  moot the Substantial Compliance Motion.

4  **V.    CONCLUSION**

5         The Court notes that the parties made several arguments and cited to several

6  cases not discussed above. The Court has reviewed these arguments and cases and

7  determines that they do not warrant discussion as they do not affect the outcome of the

8  motions.

9         It is therefore ordered that Plaintiff's Motion for Partial Summary Judgment on

10  Count I of the Complaint as to the Sammons Defendants (dkt. no. 71) is denied.

11        It is further ordered that Defendant's Amended Motion for Partial Summary

12  Judgment re Right to Appraisal of 350,000 Shares of CEC (dkt. no. 73) and Defendant's

13  Motion for Partial Summary Judgment Regarding Substantial Compliance and Prejudice

14  (dkt. no. 92) are denied as moot.

15

16        DATED THIS 29th day of September 2014.

17

18        _____

19        MIRANDA M. DU
          UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28

13